WILLIAM H. WILDS AND JOHN H. WILDS,

*vs.*

JOHN LAYTON, THOMAS J. WILDS AND MARY C. WILDS.

*Kent, April,* 1822. (*In vacation.*)

Injunction granted to restrain a tenant, holding a farm under a writ of elegit, from tilling it contrary to the established rotation of crops on the farm, and to the usage of the country in which it is situate. Such im-proper tillage, when tending to depreciate the value of the inheritance, is waste.

Waste may be committed as well of land as of houses and timber.

BILL FOR AN INJUNCTION TO RESTRAIN WASTE.—This was a motion *ex parte* for an injunction to restrain waste by the over-tilling of land. The case, as set forth in the bill, was as follows :

John Wilds died indebted to sundry persons by whom judgments were recovered against his administrator, Thomas Wallace. Among other judgments was one recovered by John Fisher in the Court of Common Pleas for Kent County, December 7th, 1818, for $74.98 ; and also another judgment recovered by John Denny and James Tribbet, in the same Court, May 8th, 1821, for $82.44. Writs of *fieri facias* were issued upon these judgments and levied upon the real estate of the decedent. Inquisitions were held, under which it was found, and so returned, that the lands taken in execution would rent for a sufficient sum, clear of all reprizes, to pay the liens against them within seven years. Thereupon, writs of elegit were issued. Meanwhile, the two judgments upon which these proceedings were taken, had been marked on the record for the use of John Layton, one of the defendants. The lands were delivered under the *elegits* into his possession, and he now holds the same.

The bill further alleged that John Wilds, the decedent, left to survive him, a widow, viz : Sarah Wilds, and five children and heirs at law. viz : the complainants, William H. Wilds and John H. Wilds, the defendants Thomas J. Wilds and Mary C. Wilds, and another child, James Wilds, who has since deceased ; that the widow intermarried with John Layton, one of the defendants ; that said Layton thereupon entered into possession of the real estate of the decedent, and received to a large amount the rents and profits of said real estate ; that said rents and profits were legally applicable to discharge the debts of the decedent remaining unpaid after exhausting the personal estate, and that they were sufficient, if faithfully applied, to discharge all of said debts, and thereby the real estate might have been saved from execution ; that, nevertheless, the said Layton held the said rents and profits for his own use, and applied no part thereof to the debts of the decedent.

The bill further alleged, that the mansion farm of the

decedent, (being part of the lands held by John Layton under the *elegit*) had always been divided, for the purposes of cultivation, into three fields, of nearly equal extent, and that at and before the death of John Wilds a rotation of crops had been observed in the tillage of said mansion farm, according to which rotation the practice had been to till and cultivate only one of said three fields yearly, by planting the same in Indian corn in the spring, and seeding the same in wheat in the fall; that the fields had never been tilled faster; that in settling the price and extent of the lands under the inquisition, the jurors had taken into consideration this rotation of crops, as the fixed and settled mode of tillage for the mansion farm, and had determined the price and extent of the mansion farm in view of such rotation of crops, and under the consideration that the same would be observed and practiced by the tenant who should hold the lands under said extent;—that, nevertheless, the defendant, John Layton, since he had come into possession of said lands, had claimed the right to till them as he pleases; that he had disregarded said rotation of crops, and was proceeding for the present year to till and cultivate two of said fields of the mansion farm in Indian corn, being two-third parts of said farm, and all of the same except the field which was tilled in Indian corn last year. The bill alleged that the rotation of crops which had previously been observed in the tillage of the mansion farm was according to good husbandry, and the custom of the country where the farm is situate; that a faster tillage was against the established rotation of crops upon the farm; that it was against good husbandry and the usage of the country; and that, if persisted in, it would greatly waste and impoverish the farm. And the complainants insisted, that the defendant, John Layton, being in possession of the farm by legal process, was bound to observe said rotation of crops. The prayer of the bill was that the defendant, Layton, might be decreed to

account for all the rents and profits of said lands which he had received, and to apply the same toward discharging the unpaid debts of the decedent, John Wilds; also that he should be restrained by a writ of injunction from tilling in Indian corn for the present year, more than one of the said three fields of the mansion farm, that being the field which was in tillage in the year 1819, and which, according to the aforesaid settled rotation of crops, was in course to be tilled in Indian corn for the present year; and for further relief.

*Hall,* for the complainants, presented the bill to the Chancellor, and moved for an injunction.

RIDGELY, CHANCELLOR, granted the order, assigning the following reasons, viz:—I am of opinion that it would be waste to till the farm contrary to the established rotation of crops on it, and contrary to the usage of that part of the country. I also think that the tillage complained of was contrary to good husbandry; but more especially was it improper, as on the *elegit* the price and extent had been made with a view to this established rotation of crops. Whatever tends to the destruction of the inheritance, or to its depreciation in value, is considered by the law as waste; and waste may be committed of land as well as in houses and timber. A defendant may be restrained from opening mines. 2 *Atk.* 182-3. So an injunction may go to restrain a tenant from doing damages, and from removing crops and manure except according to custom of the country. 16 *Ves. Jr.* 173. The cultivating or using of land in a grossly unhusband-like manner, it is said in 1 *Mad. Ch. Pr.* 138, may be restrained by injunction. Any abuse of the land by the tenant, which tends to its injury, ought to be restrained. The working a field two years successively in Indian corn is reputed to be highly injurious.

In the case of *Lord Barnard*, *Prec. Ch.* 454 ; 1 *Eq. Ca. Ab.* 400, cited in 2 *Harrison Ch. Pr.* 182, where the defendant had defaced the mansion house and was going on entirely to ruin it, a writ of injunction was granted, and a commission was ordered to issue to six commissioners, whereof the defendant was to have notice, and to appoint three on his part, or, in default thereof, the six commissioners to be named *ex parte*, to take a view and to make a report of the waste committed.

Injunction awarded.