[See Case No. 8,129.]

SCOTT (LAW v.).  See Case No. 8,129.

## Case No. 12,538.

SCOTT et al. v. LENOX.

[2 Brock. 57.] 1

Circuit Court, D. Virginia.  Dec. 26, 1822.

WASTE—TENANT BY ELEGIT.

An action of waste is not maintainable against a tenant by elegit, either upon the principles of the common law or under the statute law of Virginia.

[Cited in brief in Dejarnatte v. Allen, 5 Grat. 503.]

This was an action brought by James B. Scott and James Lyle, trustees for Scott, Irvine & Co., against Samuel Lenox, surviving partner of Heron, Lenox & Co. subjects of the king of Great Britain, to recover damages for waste alleged to have been committed on fourteen half-acre lots in the town of Manchester, and state of Virginia, which lots were held by Samuel Lenox, surviving partner as aforesaid, as tenant by elegit. On the 9th day of June, 1818, a decree was rendered by the circuit court of the United States for this district, in favour of Heron, Lenox & Co., against Archibald Freeland, for the sum of $3,672.55, with interest thereon at the rate of five per cent. per annum from the 1st day of May. 1798, till paid. This decree was subsequently enjoined, and on the 12th day of June, 1820, the injunction was perpetuated as to $622.48, part thereof, and was dissolved as to the residue; and on the 13th day of July following, Samuel Lenox, surviving partner, as aforesaid, of Heron, Lenox & Co., sued out a writ of elegit, by virtue of which the Manchester property above mentioned was extended and appraised, and a moiety of it delivered to Samuel Lenox, until he should have levied thereof the sum of money, and interest, for which the last decree was rendered, at the annual rent of $535.04, which was declared to be a reasonable annual rent by the inquisition taken in obedience to the said writ of elegit. During the pendency of

1 [Reported by John W. Brockenbrough, Esq.]

the injunction referred to, to wit: on the 29th of October, 1819, the said Archibald Freeland conveyed to Scott and Lyle, the plaintiffs, the Manchester property aforesaid, in trust to secure a debt due to Scott, Irvine & Co., amounting to $8,000, which deed was duly recorded in the clerk's office of Chesterfield county on the 30th of December following. On the 15th day of May, 1822, the plaintiffs sued out a writ of waste against Samuel Lenox, returnable on the 22d day of the same month, requiring him "to show why, when, by the laws of the Commonwealth of Virginia, it is provided that it be not lawful for any one to make waste, sale, or destruction in lands, houses, woods, or orchards, to them demised for life or years, &c. the said Samuel Lenox in divers lands and houses, with their appurtenances, &c., in the town of Manchester, county of Chesterfield, and state of Virginia, whereof the said James B. Scott and James Lyle, for the benefit of the said Scott, Irvine & Co., and of the said Archibald Freeland, are tenants of the fee, and the said Samuel Lenox, surviving partner aforesaid is tenant of the freehold, by virtue of an extent and delivery thereof to him, in pursuance of a writ of elegit, &c., committed waste, &c." This writ was not executed, and an alias was issued, returnable to the August rules, which was executed on the tenant in possession of the improved lots. and copies of it were posted at the doors of the unoccupied tenements.

The defendant, by his counsel, craved oyer of the writ, and the return thereon, of the decree in the suits of Lenox v. Freeland and Freeland v. Lenox, of the elegit and inquisition returned thereon, of the deed of trust referred to above, which being read, he demurred generally to the plaintiff's declaration.

MARSHALL, Circuit Justice. This is a demurrer to a declaration in an action of waste; and the only question is, can the action be maintained against a tenant by elegit? Could the court be guided solely by considerations of the reason and policy of the law, the argument of the counsel for the plaintiffs would certainly have great weight; but it is a case of strict authority, and by authority my opinion will be regulated. The Register contains the form of a writ of waste against a tenant by elegit, and the Register is admitted to be a book entitled to great respect. Its authority on this particular point. is, however, in some degree diminished, by the circumstance that the editor has placed this note in the margin: "Quære, If it be maintainable by the law against him?" Fitzherbert, in his Natura Brevium, says that this writ is in the Register, and that it stands with reason that this action should lie, but adds, that some say the debtor shall not have this action, because he may have account. 2

2 "And there is a writ of waste in the Register for him in the reversion against tenant by elegit, who hath lands and tenements in execution for debt or damages; and so against tenant by

The plaintiff also relies on 'a case reported in the Year Books, and decided 21 Edw. III.; that was a scire facias sued out by the person whose lands had been delivered on a recognizance, praying that the tenant might receive the money due, and restore the land. He also suggested that the tenant had cut trees growing in a wood delivered to him, and prayed for a writ to compel him to answer for the cutting aforesaid; the writ was granted.

The counsel for the plaintiff assumes that this was a writ of waste; but the case does not say so; nor does it furnish any thing that will justify this inference. A writ to compel a tenant to answer for cutting trees, is not necessarily a writ of waste. The writ was awarded, but I do not find any decision of the cause; a similar case came on at Trinity term the same year, where the judges said it would be advisable for the plaintiff to strike the cutting of the trees out of the suit, as he might bring trespass on the case for that injury. The writ in the Register, then, and the opinion of Fitzherbert, are the only authorities in support of the action.

In support of the demurrer, the counsel for the defendant has cited 1 Inst. 54a, where Lord Coke says, "No action of waste lieth against a guardian in socage, but an account or trespass; nor against a tenant by statute staple, &c., or elegit." 1 Co. Litt. 54a. It is unnecessary to speak of the high respect which is due to the opinions of Lord Coke,

elegit, who hath lands in execution by recognizance of debt: and also against his executor who hath lands in execution by elegit: and it seemeth to stand with good reason that the action doth lie. But some say that he against whom the execution is sued. shall not have an action of waste, because he may have a writ of venire facias ad computandum. &c., and there the waste shall be recovered in the debt; but by the action of waste he shall recover treble damages, and so it seemeth he shall not do by that writ of venire facias ad computandum." Fitzh. Nat. Brev. 134. tit. "Writ of Waste."

Sir Matthew Hale. in his commentary upon the passages from Fitzherbert above quoted, says: "A scire facias was against a tenant by elegit, who had cut trees, to pay the residue of the money, to answer for the trees cut, and for the plaintiff to have his lands again. Curia. By the statute against cutting trees. this is a nature of trespass, and lies not in account. Nor is he punishable by this writ, (of waste,) but in an action on the case only." Y. B. 21 Edw. III. p. 26.

Again, Fitzherbert says, "And also if a man hath lands in execution by elegit, and afterwards be in the reversion granteth the reversion to a stranger in fee, that the grantee shall have an action of waste against the tenant by elegit, seems reasonable, because the waste is to his disinheritance, and he ought not to satisfy the debt due by the grantor. And see 21 Edw. III. in title 'Scire Facias,' whether recognizor had scire facias upon his surmise that the recognizee had levied all the debt by cutting of trees." Id.

Sir Matthew Hale says: "Note, he cannot in a scire facias compel him to answer to the waste and cutting of the trees, and therefore it was waived." Y. B. 21 Edw. III. p. 30. See Fitzh. Nat. Brev. 104, noted that waste lies. Quære.

especially on subjects of this sort. He was particularly conversant in all the ancient decisions, and was well acquainted with the writs in the Register, with their reason, and with the authority on which they were founded. He understood, too, all the ancient opinions and doctrines on this subject. In Dean, etc., of Worcester's Case, 6 Coke, 37, it was contended at the bar, that the lease was void under the statute of 13 Eliz. c. 10, "because it was made for the life of others, in which case it might happen that there might be an occupant who would not be subject to waste, no more than tenant by statute merchant, or tenant by elegit, &c." It was admitted by the court, that the dean and chapter are restrained to make leases dispunishable of waste, but it was resolved that an occupant is punishable for waste, because he has the estate of the lessee for life, and is therefore within the statute of Gloucester; "but tenants by statute merchant, statute staple, or elegit, do not hold for life or years, and therefore they are not of the statute."

Two objections have been made to the authority of this case: 1. The question was not a point in the case, and the opinion, therefore, is a mere obiter dictum. 2. This dictum goes no farther than to deny that the action is given by the statute of Gloucester.

To the first objection, I answer, that although the opinion expressed by a court on a principle stated in argument, as analogous to that contended for in the cause, be not of equal authority with a decision on the very point in issue, yet, in such a case as this, it is of great weight. It was the usage of the court, in the time of Lord Coke, to decide the collateral points of law which were stated in argument, and considered by the judges as bearing on the main question. Those points were argued, and deliberately considered and settled. In this case, it was contended at the bar, that an occupant was not punishable for wastes, no more than a tenant by elegit. The court resolved that an occupant was punishable for waste. which was the very point in controversy, though a tenant by elegit was not, and took the distinction between the two tenants. Certainly when a principle is stated at the bar as acknowledged law, and is declared by the court to be law, it deserves great respect, though it may not have all the authority of an express decision on the very point in issue.

2. To the second objection, it is to be observed, that the proposition made at the bar was general, that the action was not maintainable. Of course it was not maintainable either at the common law or by statute. The court assents to this proposition, and gives as a reason, that it is not within the statute. The inference is, that by the admission of all, it was not maintainable at common law; and to show the truth of the general propo-

sition that the action could not be sustained, it was necessary to state only that it was not given by statute. In 4 Inst. pt. 2, p. 299, Lord Coke says: "At the common law, waste was punishable in three persons, viz. tenant in dower, tenant by the curtesy, and the guardian."

It is argued, that although tenant by elegit is not comprehended in this enumeration, Lord Coke is not to be understood as denying that the action might be maintained independent of any statute, because the estate did not exist at common law, but was created by statute. When created, it is contended, the principles of the common law give the action, because the estate is created by act of law, and not by the act of the party. This argument is not without its weight; but it is opposed by other reasons, which seem to me to be entitled to greater consideration. When we consider the fullness with which Lord Coke discusses every question on which he treats, we cannot resist the conviction that, had he supposed that the action was maintainable on the principles of the common law, he would have said so, and not have left the student to draw the very strong inference against the action which his words justify. But his opinion on this point is expressly declared in his 1st Inst., in the passage already cited.

If this action cannot be maintained at the common law, it depends entirely on an act of assembly. Act Dec. 26, 1792; 1 Rev. Code, 1819, c. 117, p. 462. That act seems to have been intended to comprehend the whole subject, since it enumerates the persons against whom the action lay at common law. If a tenant by elegit be comprehended in this act, it must be under the words "tenant for years." It has been contended at the bar, that a tenant by elegit is a tenant for years, because that is certain which may be rendered certain, and when the land is delivered to him at a certain annual rent, to be held till it discharges a certain sum, he is tenant for a certain number of years, which may be computed with exactness. Were this a case of the first impression, I should incline strongly to this opinion. I do not clearly perceive the distinction between the tenant who holds lands at ten dollars per acre, until he shall receive one hundred dollars, and a lease for ten years, if J. S. shall so long live. The tenancy by elegit is determinable within the time by the payment of the money, and the estate for ten years is determinable within the time by the death of J. S. But the question is as completely settled as a question of law can be settled by authority. Lord Coke, in his commentary on the statute of Gloucester, says, that tenant by elegit is not within it, because he is not a tenant for years. All the books concur in this opinion. There is not, I believe, a dictum against it.

I think the demurrer must be sustained.