CAMDEN TRUST COMPANY, trustee for bondholders, complainant-respondent,

*v.*

MORRIS HANDLE et ux., defendants, and WARNER BROS. THEATRES, INC., defendant-appellant.

[Argued February 6th, 1942. Decided June 25th, 1942.]

*Messrs. Starr, Summerill & Lloyd (Mr. Alfred E. Driscoll and Mr. Runyon Colie, of counsel), for the appellant.*

*Messrs. Waddington & Tilton (Mr. Edward C. Waddington, of counsel), for the respondent.*

The opinion of the court was delivered by

HEHER, J.

Unless it constitutes a breach of duty arising out of contract, the unassuming grantee of mortgaged lands is not liable to the mortgagee for permissive waste, even though the mortgage security is thereby rendered insufficient.

Such liability is unknown to the common law; and in this state it has not been imposed by statute. Waste at common law "is a spoil or destruction in houses, gardens, trees or other corporeal hereditaments, to the disherison of him that hath the remainder or reversion in fee simple or fee-tail." *2 Blacks. Com. 281.* By the early common law, the writ of waste lay only against the tenants of estates created by the law, as distinguished from those which came into being through act of the owner. The law thus safeguarded the inheritance against waste at the hands of the particular tenant where it established the particular estate. In all other cases, it left the protection of the freehold to the party creating the partial estate. Originally, only tenants by the curtesy, tenants in dower and guardians in chivalry were chargeable with waste. Lessees for life or for years were not under such disability, since their estates "came in by the act of the owner, who might have provided in his demise against the doing of waste by his lessee, and if he did not it was his own negligence and default." *2 Min. Inst. 299, 302; Co. Litt. 54; 2 Blacks. Com. 282; Moore ads. Townshend, 33 N. J. Law 284.* "Those tenants of particular estates who come in by the act of the parties are at common law liable not otherwise than upon their covenants; and if the landlord make

no provision, by express agreement, against waste, he is in those cases (independently of statute) without remedy, and is left to suffer the consequences of his neglect." *Minor & Wurts on Real Property* § *390.*

Since the owner of the inheritance is dispunishable of waste, neither the owner of a defeasible fee nor a tenant in tail is accountable for waste at common law, although a tenant in tail after possibility of issue extinct may be enjoined from committing waste. *Co. Litt. 54; 2 Roll. Abr. 826, 828; Attorney-General* v. *Marlborough, 3 Madd. 498; 56 Reprint 588; Garth* v. *Colton, 3 Atk. 751; 26 Reprint 1231; 1 Ves. 524, 546; 27 Reprint 1182, 1196; Cook* v. *Whaley, 1 Eq. Cas. Abr. 400; 21 Reprint 1132; 2 Min. Inst. 614; 2 Blacks. Com. 115, 116.* And a tenant by *elegit* is not subject to a writ of waste, but may be restrained from committing waste. *Scott* v. *Lenox, 21 F. Case. No. 12,538; 2 Brock. 57; Wilds* v. *Layton, 1 Del. Ch. 226.*

By the statute of Marlbridge, adopted in the year 1267, the class thus liable for waste was enlarged to include tenants for life and for a term of years; and by the later statute of Gloucester, enacted in 1278, the punishment for waste was fixed at forfeiture of the thing or place wasted and treble damages. *St. 52 Hen. III c. 23; St. 6 Edw. I c. 5.* Tenants at will were not comprised within this statutory modification of the common law; and, while not punishable for waste *eo nomine,* it was early laid down that the commission of such act of destruction as would be waste if done by a tenant for life or for a term of years determines the estate of the tenant at will, "and he is then liable to an action for the waste as for a trespass," although not chargeable with permissive waste under the cited statutes, "but only by virtue of express stipulations." *2 Min. Inst. 619; 1 Th. Co. Litt. 644, 645, note (19) : Bac. Abr. Waste (H); Gibson* v. *Wells, 4 Bos. & Pull. 290; Herne* v. *Bembow, 4 Taunt. 764; Jones* v. *Hill, 7 Taunt. 392; Countess of Shrewbury's Case, 5 Coke. 13; Moore* ads. *Townshend, supra; Minor & Wurts on Real Property* § *391.*

The statutes of Marlbridge and Gloucester were early construed to include permissive as well as voluntary waste.

*Moore* ads. *Townshend, supra; 2 Blacks. Com. 283; 3 Id. 225.* But now it seems to be the view in England that these enactments do not render tenants for life punishable for permissive waste. *In re Cartwright (1889), 41 Ch. Div. 532.* Therein Kay, J., declared that at "the present day it would certainly require either an Act of Parliament or a very deliberate decision of a court of great authority to establish the law that a tenant for life is liable to a remainderman in case he should have permitted the buildings on the land to fall into a state of dilapidation." And the same has been said of tenants. from year to year and for a term of years under a lease which does not contain a covenant to repair. *Gibson* v. *Wells, supra; Herne* v. *Bembow, supra; Powys* v. *Blagrave, 41 De Gex. M. & G. 448; In re Parry (1900), 1 Ch. 160; Jones* v. *Hill, supra; Chit. Pl. 159.* Yet, under the earlier view, the liability of lessees for life or for years for permissive waste "is grounded, not on the covenants or agreements in the instruments of demise, but on the statute, which subjected them to the action of waste." *Moore* ads *Townshend, supra.*

The statutes of Marlbridge and Gloucester have been incorporated into our statute law. *Rev. 1877 p. 1235; R. S. 1937, 2:79-1, 2:79-2, 2:79-3.* They are not in terms embracive of a mortgagor or his grantee; nor has there been any subsequent statutory modification inclusive of this class. And, under article X, paragraph 1, of the State Constitution, the common law and statute laws then in effect, not repugnant to the organic law, remained in force until they expired "by their own limitation," or were "altered or repealed by the legislature." *Vide State* v. *Mairs, 1 N. J. Law 385; Stewart* v. *Chance, 3 N. J. Law 396; Loudon* v. *Loudon, 114 N. J. Eq. 242; Stemmer* v. *Kline, 128 N. J. Law 455.* There are particular reasons why the title to real estate and the incidents of such ownership should be governed by the common law until modified by the legislative authority. It is requisite to a well-ordered society that there be stability and certainty in the law relating to the descent and alienation of real property, the rights and duties pertaining to its ownership and use, and the remedies for injuries thereto; and this

requirement is served by the direction of the Constitution that the common law and the statutes then in force should prevail until the legislative power decreed otherwise. The noninclusion of the mortgagor's estate in the last cited statutory provisions, considered in the light of the historic setting, reveals a legislative policy not to subject the mortgagor or his assigns to liability for permissive waste.

A mortgage does not vest in the mortgagee an immediate estate in the lands with the right of immediate possession, defeasible upon the payment of the mortgage money, but merely gives him a right of entry upon breach of the condition, in which event his estate has all the incidents of a common law title, including the right of possession subject to the equity of redemption, and, meanwhile, the mortgagor is deemed the owner of the lands for all purposes. The mortgage is treated as essentially a security for the debt. *Sears, Roebuck & Co.* v. *Camp, 124 N. J. Eq. 403; Stewart* v. *Fairchild-Baldwin Co., 91 N. J. Eq. 86; Shields* v. *Lozear, 34 N. J. Law 496.* In a court of law, there is no use which "can be made of the legal estate of a mortgagee before foreclosure or entry, save the assertion and maintenance, by himself, his heirs or assigns, of a right to the possession of the land, continuing until payment of the debt." *Kircher* v. *Schalk, 39 N. J. Law 335.* See, also, *Hutchins* v. *King, 1 Wall. 53; 17 L. Ed. 544.*

Here, as the learned Vice-Chancellor found, the defendant had not undertaken "to keep the mortgaged premises in operation as a theatre." It was common ground at the hearing that respondent's asserted right of recovery for waste could not be made to rest upon the "covenants in the mortgage." The contention was that the mortgagor's grantee, as such, "owed a duty" to the mortgagee "not to impair the security of the mortgage;" and that its "failure to repair the premises, to pay taxes thereon, and the removal of said fixtures constituted such an impairment of the * * * mortgage security as to amount to actionable waste."

Voluntary or active waste impairing the sufficiency of the security is remediable. *Tate* v. *Field, 57 N. J. Eq. 632.* Such is actionable as a positive, affirmative wrong injurious

to the mortgagee's property; and it is variously held to give rise to a right of action in trespass or in case. *Jackson* ads. *Turrell*, *39 N. J. Law 329; Schalk* v. *Kingsley*, *42 N. J. Law 32; Verner* v. *Betz*, *46 N. J. Eq. 256; 41 C. J. 648; Page* v. *Robinson*, *10 Cush. 99; Thompson on Real Property* § *4993; Minor & Wurts on Real Property* §§ *395, 396.* It is generally recognized that the primary distinction between waste and trespass is that in the former case the injury is done by one rightfully in possession. It would seem that there cannot be waste unless there is privity of estate or title. Yet see *Story Eq. Jur. (14th ed.)* § *1245.*

But damages for permissive waste are not recoverable by the mortgagee. As respects mere acts of omission, the mortgagor and his assigns are not liable for waste otherwise than upon their covenant. Chancellor Kent was of the opinion that, while Chancery "will always, on the application of the mortgagee, and with that object in view, stay the commission of waste by the process of injunction," an action at law by the mortgagee "will not lie for the commission of waste, because he has only a contingent interest," although actions of trespass *quare clausum fregit,* by the mortgagee, "for the commission of waste, by destroying timber, or removing fixtures, have been sustained against the mortgagor in possession, in those states where they have no separate equity courts with the plenary powers of a court of chancery." He continued: "The interference with the discretion of the mortgagor is not carried further, and, in ordinary cases, he is not bound to repair, and keep the estate in good order; and there is no instance in which a court of equity has undertaken to correct permissive waste, or to compel the mortgagor to repair; * * *. As the law stands, it would seem, that the mortgagee is left to guard his pledge against such contingencies, by his own provident foresight and vigilance in making his contract, or to seek for aid in the enlarged discretion of a court of equity, which would interfere for his indemnity in special cases, in which justice manifestly required it." *4 Kent's Com.* § *161.* And it was the view of Professor Tiedeman that, if the party in possession (whether mortgagor or mortgagee, or their respective assigns) "does

anything in respect to the mortgaged property which constitutes waste, and as such essentially impairs the value of the inheritance," he is responsible in damages to the party injured, but a mortgagor "is not guilty of waste, on account of acts of omission. In the absence of an express covenant to repair, he is not guilty of waste, as against the mortgagee, if he fails to keep the premises in repair." *Tiedeman on Real Property.* § *265.* "It is not waste at common law," observed Baron Parke, "either wilful or permissive, to leave the land uncultivated. In order to oblige him to farm according to good husbandry, you must have either some express contract, or some implied contract from the custom of the country." *Hutton* v. *Warren, 1 M. & W. 466, 476.* Commissive waste is tortious in nature, and so remediable by action on the case. *1 Chit. Pl. 148, 158.* Taking note of the fundamental distinction, it has been held that case does not lie for permissive waste, for, if the duty be raised by the law and there be no covenant, there is an implied *assumpsit* from the particular tenant to perform, and, if there be a covenant, the action shall be on that. *Danziger* v. *Silberthau, 18 N. Y. Supp. 350.*

The learned Vice-Chancellor undertook to reason by analogy. Citing *3 Tiffany on Real Property (2d ed.)* § *618,* he declared that "what constitutes waste as between a mortgagor and a mortgagee is ordinarily to be determined by the same considerations as apply to the question of waste between tenant and remainderman or reversioner," and that the "mortgagor in this respect stands to the mortgagee as a tenant to the landlord or a tenant for life to a reversioner." But the author was speaking of voluntary waste. The cases invoked to sustain the text all concern active waste, *i. e.,* the cutting and carrying away of timber, the pulling down of houses, structures, and the like. *Young* v. *Haviland, 215 Mass. 120; 102 N. E. Rep. 338; Delano* v. *Smith, 206 Mass. 365; 92 N. E. Rep. 500; Page* v. *Robinson, supra; Goodman* v. *Kine, 8 Beav. 379; King* v. *Smith, 2 Hare 239; Hutchins* v. *King, supra.* He found it to be the general rule (*section 286*) that courts of equity will not "take jurisdiction of a proceeding to restrain permissive waste, or give compensa-

tion therefor." These English cases so rule: *Castlemain* v. *Craven, 22 Vin. Abr. 523; Wood* v. *Gaynon, Amb. 395; Powys* v. *Blagrave, supra; In re Hotchkys, 32 Ch. Div. 408, 418.* In the occasional English decisions asserting an obligation to make repairs as against a tenant from year to year, the failure of duty is not termed permissive waste. *Torriano* v. *Young, 6 Car. & P. 8.*

Our courts long since laid it down that these relationships are not analogous and cautioned against the hazards of reasoning upon the converse hypothesis. In *Kircher* v. *Schalk, supra,* the first mortgagee instituted an action in replevin to recover a steam engine which, as a fixture upon the realty, was subject to the mortgage, but was removed by the second mortgagee after the first mortgage had matured and before the holder had entered into possession of the lands. The contention was made that, after the maturity of the debt, the mortgagor in possession was "the mere tenant at will of the mortgagee," and that "the possession of a tenant at will is construed to be the possession of the landlord, and that, therefore, the plaintiff could stand upon the second principle mentioned, as having an interest in the land and the constructive possession." In overruling it, Mr. Justice Dixon for the Supreme Court said: "Sometimes the tenure of a mortgagor so situated has been likened to that of a tenant at will; but there is much truth in Lord Denman's remark, in *Doe* v. *Barton et al., 11 A. & E. 307,* where he said, 'It is very dangerous to attempt to define the precise relation in which mortgagor and mortgagee stand to each other, in any other terms than those very words,' and those who adopt the simile of a tenancy at will, have by no means evaded the dangers of the attempt. In one single sense, the mortgagor is tenant at will of the mortgagee: the latter may, at will, oust the former by ejectment, and even this is subject to the qualification that the mortgagor does not pay the debt, and so prevent the ouster. But, unlike estates known as tenancies at will, the interest of the mortgagor is a freehold of inheritance, in which his widow is entitled to dower, and out of which he may, by mere conveyance, create other estates of freehold. On the strength of his title, he may maintain eject-

ment without relying on the title of his mortgagee, from whom, indeed, his rights are not derived, and if the premises be vacant, he, as the owner, draws to himself the constructive possession, and thereon may support an action of trespass against a wrongdoer. The actual possession of one having such substantial interests, ought not, I think, to be regarded as the constructive possession of another, and, therefore, the plaintiff cannot stand upon this ground."

And in *Tate* v. *Field, supra,* Chief-Justice Gummere for this court declared: "The position of a mortgagor in possession of the mortgaged estate bears no analogy to that of tenant for life. The mortgagor in possession is, in equity, the owner of the estate, and may exercise all acts of ownership, even to the committing of waste, provided he does not diminish the security and render it insufficient. * * * And not only is there no analogy between the position of a mortgagor in possession and that of a tenant for life, with reference to waste committed, but the rule for the admeasurement of damages is different. In the case of the former the measure of damages is the diminution in the value of the mortgage security"—citing *Jackson* ads. *Turrell, supra; Schalk* v. *Kingsley, supra.*

The mortgagor has the inheritance; and the mortgagee has such right and interest therein as arise out of the contract. As said by Mr. Justice Trenchard for this court in *Stewart* v. *Fairchild-Baldwin Co., supra:* "The mortgagee is not entitled to any special favor. He is a secured creditor and has dealt with open eyes. He must look to the security."

The case in hand is not one of the "special cases," referred to by Chancellor Kent, in which indemnity may be had through the exercise of "the enlarged discretion of a court of equity." "Equitable waste" is a nebulous term—a doctrine of obscure limitations. It is such as is cognizable only in a court of equity. It is said that it has reference to cases where, by the terms of the will, deed, settlement or lease, the tenant holds the land without impeachment of waste. *Pom. Eq. Jur. (5th ed.)* § *1348.* The difficulty is in delineating the scope of the principle that seems to have governed the interposition of equity in such cases. It would seem that,

on principle, damages are not generally assessable in equity against a particular tenant who holds without impeachment of waste at law. But an eminent authority on equity jurisprudence defines equitable waste as "such acts as at law would not be esteemed to be waste under the circumstances of the case, but which in view of a court of equity are so esteemed from their manifest injury to the inheritance, although they are not inconsistent with the legal rights of the party committing them." *Story Eq. Jur. (14th ed.)* § *1242*. He gives as instances of this class the felling of timber on the mortgaged premises to such an extent as to render the security insufficient, and the pulling down of houses by a tenant for life without impeachment for waste, or the commission of other waste wantonly and maliciously; and he cites holdings that "a court of equity ought to moderate the exercise of such a power, and *pro bono publico* restrain extravagant humorous waste." Pointing out that "tenants for life without impeachment for waste, and tenants in tail, after possibility of issue extinct, have been restrained not only from acts of waste to the destruction of the estate, but also from cutting down trees planted for the ornament or shelter of the premises," he continues: "In all such cases the party is deemed guilty of a wanton and unconscientious abuse of his rights, ruinous to the interests of other parties."

Our Court of Chancery has enjoined the cutting of wood and timber in such quantity as to impair the sufficiency of the mortgage security, even though the mortgagee had authorized the mortgagor "to cut the wood off his premises at his pleasure, for use in the sawing business, * * * and to convert it into wood and timber, as he should see fit." *Emmons v. Hinderer, 24 N. J. Eq. 39.* Where the fee-simple estate is liable to be divested by the taking effect of an executory limitation, the owner of the executory interest may have an injunction to restrain active waste (*i. e.*, the cutting of ornamental or immature timber surrounding the mansion house), although the estate was held without impeachment of waste, on the ground that the intention of the testator would thereby be frustrated. *Turner v. Wright, 2 DeG. F. & J. 234; 63 Eng. Ch. 181; 45 Reprint 612* (affirming

*Johns. 740; 70 Reprint 618*). A tenant in tail after possibility of issue extinct may commit ordinary waste, but willful acts of destruction are restrainable as an abuse of his legal power, and therefore waste cognizable in equity. *Co. Litt. 27b; Bowles' Case, 11 Coke 79b; Attorney-General* v. *Marlborough, supra; Abraham* v. *Bubb, 2 Freeman 53; 2 Show. 69.*

In *Minor & Wurts on Real Property,* reference was made to the rule that the destruction of ornamental shelter and shade trees warrants equitable interference to remedy a "grievance" not cognizable at law; and it was said that equitable intervention in such cases was of "very doubtful propriety (the proper recourse being to the legislature to change the law)." *Section 387.* Another instance of equitable waste given by these writers "is where a tenant without impeachment of waste is guilty of making an unconscientious use of his power by willful, malicious, extravagant or 'humorous' destruction of the premises." *Section 388.* See, also, *2 Min. Inst. 616.* And a third "is where the party aggrieved has equitable rights only." *Section 389.* The doctrine of equitable waste has been applied in the case of a long term lease, renewable forever, where the security for the rent is likely to be destroyed or lessened by the acts of the tenant. *Crowe* v. *Wilson, 65 Md. 479; 5 Atl. Rep. 427.* And Chancery may intervene to stay voluntary waste if the sufficiency of the security is thereby threatened. *Eisenberg* v. *Javas, 100 N. J. Eq. 326; Verner* v. *Betz, supra; Fidelity Trust Co.* v. *Hoboken and Manhattan Railroad Co., 71 N. J. Eq. 14, 28.*

Thus it is that equitable jurisdiction in this behalf seems to have been confined to wanton, malicious and unconscientious acts of the particular tenant injurious to the inheritance, in contravention of the presumed will of the creator of the limited estate. It is largely upon this ground that equity has afforded a remedy where the acts denominated waste were not inconsistent with the legal rights of the holder of the partial estate. But the particular tenant is not so punishable for merely permissive waste grounded on the omission of repairs that are not commanded either by statute or the

contract. Such is not included within this equitable juris-
diction. The assumption of that power would result in the
imposition of an obligation not created by law nor within
the contemplation of the parties.

The legislature, in the statutory provisions adverted to,
has made a distinction that we are not at liberty to ignore.
A disregard of it plainly would constitute the exercise of
the legislative function and impose a liability extra the con-
tract, thus working manifest injustice in the case at hand,
for it is but fair to assume that the mortgagor's grantee
stipulated with reference to the law as it had theretofore
been expounded, and that if the law had been otherwise, it
would have contracted against the asserted liability, or not
at all. It is not within the competency of equity to enlarge
the contract. And there is no public policy requiring indem-
nity from the mortgagor or his grantee for failure to repair
the mortgaged premises where the contract does not give rise
to the duty. Such declaration of policy is exclusively within
the legislative province. For example, the statute of Marl-
bridge was deemed essential because the doctrine limiting
actionable waste to estates created by the law "was found
extremely inconvenient, as tenants took advantage of the
ignorance of their landlords and committed acts of waste
with impunity." *2 Min. Inst. 299, 305.* But the further
extension of this policy has not been considered prudent by
the legislative authority.

Equity follows the law. While it will provide means of
enforcement not to be had at law, it is bound to regard the
rights of the parties as established at law unless a counter-
vailing equity calls for relief. The maxim is applicable to
the interpretation of statutes and as well to matters of public
policy. *Brewer* v. *Wilson, 17 N. J. Eq. 180; Provident
Institution for Savings* v. *Allen, 37 N. J. Eq. 36; affirmed,
Id. 627; Birch* v. *Baker, 81 N. J. Eq. 264; Glaser* v.
*Achtel-Steller's Restaurant, 106 N. J. Eq. 150.*

These considerations are also dispositive of the contention
that the default in the payment of the taxes assessed against
the mortgaged lands takes the category of permissive waste
for which the mortgagor's grantee may be made to respond

in damages. True, the obligation to pay the accruing taxes is a contractual incident of ownership. The mortgagors covenanted to pay the principal and interest thereby secured "without any deduction" therefrom of taxes imposed upon any property described in the indenture "for any state or municipal purposes" (which taxes the mortgagors expressly undertook to pay) ; also, that the indenture of mortgage should "always be kept as a first lien" upon the mortgaged premises, and they would "not create or suffer to be created any lien or charge having priority to or preference over the lien" of the mortgage upon the mortgaged lands; and that, upon default in the payment of accruing taxes for a specified period, the mortgage lien would become subject to foreclosure.

Yet the failure to discharge this pecuniary obligation is not classable as waste. Certainly, the omission of duty in this regard is not voluntary waste. And it does not fall into the category of permissive waste as known to the common law. Such "is waste by reason of omission or not doing, as for want of reparation * * * for he that suffereth a house to decay which he ought to repair, doth the waste. * * *." *2 Coke's Inst. 145.* See, also, *2 Blacks. Com. 281; 4 Pom. Eq. Jur.* (*5th ed.*) § *1348.* It is to be observed here that, unless there is special provision therefor, a tenant for years is not obliged to pay the accruing taxes, and yet he is liable for permissive waste under the doctrine of the case of *Moore* ads. *Townshend, supra.*

Nor is appellant subject under any tenable theory to a personal decree for the payment of the defaulted taxes. When they became in arrears the mortgagee was at liberty to liquidate them and thus increase the *quantum* of the mortgage debt. But the obligation thereby arising would be enforceable only through the mortgage. The principle is embodied in *R. S. 1937, 46:9-3,* first enacted in 1918. It is there provided that a mortgagor's covenant that "no owner of the mortgaged property shall be entitled to any credit by reason of the payment of any tax thereon" shall be construed as a covenant by the mortgagor, his representatives and assigns, that "he and they will not, by reason of the payment of any tax, assessment or other municipal charge or imposi-

tion, claim any credit on account" of the mortgage debt, and that should they "fail to pay any tax, assessment or other governmental charge," the holder of the mortgage "may at his option pay such" charge "and the amount when so paid shall be added to and become part of the principal sum then due upon the bond or obligation * * * and be secured by said mortgage and shall be payable on demand with legal interest." *Vide Pennsylvania Company for Insurance on Lives and Granting Annuities* v. *Broadway-Stevens Co., 105 N. J. Eq. 494.*

In *Stewart* v. *Fairchild-Baldwin Co., supra,* this court ruled that the mortgagee could not take the rents or profits until after he had entered into possession of the mortgaged lands, following a breach of the condition, and that, since the receiver's right does not rise higher than the mortgagee's, the rents which had accrued prior to his appointment belong to the mortgagor or the owner of the fee, and are not applicable to the payment of arrears of taxes. The failure of the landowner to apply the rents to the payment of taxes is not a fraud upon the mortgagee. If, by reason of such default, the security is rendered "uncertain or precarious," a receiver may be appointed. The theory of fraud accepted by the Vice-Chancellor was termed one which "does not comport with the legal or equitable relationship of mortgagor and mortgagee." Compare the earlier cases of *Farmer* v. *Ward, 75 N. J. Eq. 33; New Jersey Title Guarantee and Trust Co.* v. *Cone, 64 N. J. Eq. 45; Manning* v. *Tuthill, 30 N. J. Eq. 29.*

The decree is reversed, with costs; and the cause is remanded with direction to assess the damages for voluntary waste only and to enter a decree accordingly.

*For affirmance*—DONGES, J. 1.

*For reversal*—THE CHIEF-JUSTICE, PARKER, BODINE, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 12.