WARNER et al. v. COCHRANE.

(Circuit Court of Appeals, Second Circuit. March 11, 1904.)

No. 112.

1. LEASES—COVENANT AGAINST ASSIGNMENT—BREACH—WAIVER.

Where a lessor, with knowledge that her lessees had assigned the lease in violation of a covenant against such assignment, conducted various correspondence with the assignee, and treated it as her tenant, and made no objection until after the lessees had changed their position to their prejudice, and deprived themselves of the ability to perform an option of renewal contained in the lease, the lessor was estopped to deny that she had consented to such assignment.

2. SAME—DEMAND FOR RENEWAL.

Where an assignment of a lease containing a covenant of renewal was valid as against the lessor, a demand for such renewal was properly made by the assignee to whom such covenant to renew passed by the assignment.

3. SAME—CONCURRENT CONDITIONS.

A lease of asphalt land provided that if, on or before July 1, 1900, the lessees should not have paid royalty on 34,000 tons of asphalt at the rate fixed, they should pay to the lessor on such day royalty equal to the difference between the royalty paid and that payable on that number of tons, and if at that time the lessees should have performed all the conditions contained in the lease, the lessor covenanted to renew the lease at the lessees' option. *Held,* that the conditions for renewal and payment were concurrent, and the lessor, having refused to renew, was not entitled to recover the differential payment provided for.

4. SAME—REMEDIES—ELECTION.

Where a lease of asphalt land provided for a renewal concurrently on the payment by the lessees of a sum equal to the difference between the royalty paid and that which would be payable on a specified number of tons of asphalt, and the lessor wrongfully refused to make such renewals, the lessees or their assignees were at liberty either to tender such differential rent and insist on specific performance of the covenant to renew, or refuse payment, and treat the contract as at an end.

In Error to the Circuit Court of the United States for the Southern District of New York.

A. J. Rose, for plaintiffs in error.

Albert Stickney, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The defendant in error, plaintiff in the court below, is the executor of the Countess of Dundonald, who was a subject and resident of Great Britain, and who brought this action to recover rents or royalties under the stipulations of a lease to defendants of certain asphalt properties in the Island of Trinidad. The defendants, at the time of the transaction complained of, were citizens of and residents in the state of New York. The agreement which is the basis of the action is in writing, and all the material dealings between the parties appear from the correspondence. The lease conferred upon the lessees the exclusive right for the term of four years and five months from February 1, 1896, "to dig, work, search

¶ 1. See Landlord and Tenant, vol. 32, Cent. Dig. § 230.

for, and win all pitch and asphalt of good merchantable quality suitable for paving purposes, upon the certain lands of said lessor," subject to a certain rental and royalties and other provisions, including a provision for renewal. The following quotations from the lease show the covenants of the parties material to the questions herein:

"If, on or before the first day of July, 1900, the lessees shall not since the commencement of the lease have won out of the said lands and paid royalty upon the total quantity of thirty four thousand tons of pitch or asphalt at the rate aforesaid, they shall subject to the provisions hereinafter contained on the said first day of July, 1900, pay to the lessor royalty at the rate aforesaid upon such number of tons as shall be the difference between the number of tons upon which royalty shall have been paid and the said number of 34,000 tons. * * *

"The lessees shall not assign or underlet the premises hereby demised or any part thereof without the consent in writing of the lessor. * * *

"The lessor also covenants with the lessees that if at the expiration of the said term the lessee shall have paid the rents hereby reserved and observed and performed the conditions herein contained and on their parts to be observed and performed and shall be desirous of renewing said terms, and shall give to the lessor, her heirs or assigns six months notice in writing, personally or by leaving the same at her, their or any of their usual or last known place of abode in England, then the lessor will grant and the lessee shall take a renewed lease in respect of the said land and premises for a further term of ten years. * * *

"If any dispute or difference shall arise between the lessor or lessees concerning any matter or thing whatever herein contained or the operation or construction thereof or any other matter or thing in any way connected with these presents or the rights, duties and liabilities of either party under or in connection with these presents then in every such case the dispute or difference shall be determined in a manner to be agreed upon between the parties and in case of their disagreement then by action or suit in Her Majesty's High Court of Justice in England and not elsewhere and this clause may be pleaded against any action or suit or commenced by either party out of England."

In March, 1896, the defendants, with certain other persons, formed a corporation known as the Columbia Construction Company, and in April, 1896, a contract was entered into between said company and these defendants whereby the latter agreed to furnish to the Columbia Company an amount of asphalt equal to the amount to which they were entitled under said lease. The Columbia Company "covenants and agrees to take such asphalt and win and dig all the pitch or asphalt herein referred to and transport the same from the said Island of Trinidad, * * *" and "to pay for the rights, privileges, and asphalt hereby secured the further sum or sums of money required to be paid under said contract with Louisa Harriet Dundonald directly or to the parties of the first part, at the option of said second party." It does not appear that this contract was ever brought to the notice of the Countess Dundonald. In May, 1899, a portion of the defendants executed an assignment of said lease to said Columbia Company.

The record correspondence between the parties is evidently incomplete. In the correspondence between August 21, 1896, and February 21, 1898, the plaintiff, addressing her letters to the defendant Warner, referred to "your company" and "your engineer of Columbia Construction Company"; and Warner, in his replies, referred to "the company" and "our company," and signed all of said letters individually, with one exception. The first payment, on January 1, 1897, was prom-

ised by Warner, signing himself "C. M. Warner, Pres." The payment was made by Columbia Construction Company, "the same being due you on lease * * * between yourself and C. M. Warner et al." One later payment appears to have been made by Warner personally. Payments subsequent thereto were made by the Columbia Company to Lady Dundonald, and accepted by her. In her later letters Lady Dundonald repeatedly used such expressions as "my lease to the Columbia Construction Company," "rent due by Columbia Construction Company," "I have to call on you [the Columbia Construction Company] to carry out your covenants"; and on February 11, 1889, she authorized the company at her expense "to protect or enforce my titles and rights of possession so as to assure your uninterrupted and peaceable working * * * of the lands * * * leased by me to you." All claims and royalties were paid prior to June 30, 1900, except for the difference between amount of asphalt dug and 34,000 tons as specified in said agreement, and for this sum, amounting to $14,061.79 and costs, the court directed a verdict in favor of plaintiff.

The questions raised by the assignments of error are the following: (1) That Lady Dundonald consented to the assignment to the Columbia Company. (2) That she broke the covenant to renew the lease. (3) That the agreement that any dispute or difference under the lease should be determined by "Her Majesty's High Court of Justice in England" is a bar to this action.

A critical examination of the correspondence establishes the consent of Lady Dundonald to the assignment of the lease. In fact, her course is inconsistent with any other conclusion. In addition to the repeated recognition of the Columbia Company as her lessees, and her continued receipt of rents from it, the following statements made by her establish her waiver of her right to object to said assignment:

(1) In her letter of May 24, 1900, attempting to take advantage of said assignment, she refers to her letter of February 11, 1899, in which, as she says, she wrote to the Columbia Company, her lessees, and authorized them to take legal proceedings on her behalf to insure their uninterrupted occupation at her cost, and says, "This letter [of February 11th] was clearly revocable by me, and it has now been revoked." Having thus admitted that she had recognized the Columbia Company as her lessees, and as entitled to enforce her rights as above, she fails to revoke the recognition in said letter until May 2d, or nearly six months after the Columbia Company had given her notice of its desire to exercise its option for renewal of the lease.

(2) On January 15, 1899, Lady Dundonald, having received notice of a change in the personnel of the stockholders of the Columbia Company, replies thereto by referring to the provision against an assignment in the lease, and saying that, before she could give her consent to any substantial change in the composition of the company, she should require to be informed of the names of those who now control it, and requested references as to their commercial standing and ability to carry out their agreements. Thus having asserted her right to object to the assignment, she merely requests the Columbia Company to obviate said objection by giving her satisfactory references as to the solvency of the new management, and impliedly says: "I

have no objection to the Columbia Company as my lessees by virtue of said assignment, but before I consent to said change in the management I wish certain information." This information was furnished. Lady Dundonald thereafter renewed her dealings with the Columbia Company, and failed to further suggest or assert any right to insist upon said provision against assignment until after the Columbia Company had notified her of their option to renew the lease.

(3) Prior to her final letter, which was written in the latter part of June, but subsequent to the notice of exercise of option to renew by the Columbia Company, Lady Dundonald, having reached the conclusion that the rent to be paid by the lessees was much less than it should have been, states that she regards herself as free to make such new arrangement as she deems proper, and contents herself with mere notices of intention to exercise her right not to renew, and a refusal to admit the right of the Columbia Company to make a claim for a renewal in its favor. But in said final letter she definitely repudiates said agreement, and states that she shall take legal steps to recover possession of the property.

Where a lease contains a provision that the lessee shall not sublet or assign without the written consent of the lessor, if the leased property be turned over to another without the original consent of the lessor, and the lessor acquiesces therein, and fails to seasonably object thereto, the breach of the agreement will be considered as waived by him. The Elevator Cases (C. C.) 17 Fed. 200, 3 McCrary, 463. In these circumstances, the declarations of Lady Dundonald not only conclusively establish her consent to said assignment, but, in view of the fact that she postponed making any objection thereto until after the time when the defendants, if they had been notified of that option, might have made the tender instead of the Columbia Company, we think the plaintiff is now estopped to take advantage of the wrong of his testatrix, and to deny the truth of her representations, by reason whereof the lessees, assuming her consent to the assignment, were induced to assume a position prejudicial to their interests. The assignment being valid as against the lessor, the demand for renewal was properly made by the assignee, to whom the covenant to renew passed by the assignment. Parsons on Contracts (8th Ed.) vol. 1, p. 243; 18 American & English Encyc. of Law (2d Ed.) 786. It follows that the refusal to renew, after seasonable notice, was wrongful.

The second assignment of error is based upon the claim that Lady Dundonald, by such refusal, disentitled herself to sue upon the written contract for recovery of the stipulated amount of differential rent. Defendants had bound themselves to pay said difference on July 1, 1900, subject to the provisions of said lease, including said agreement for renewal. Lady Dundonald had bound herself to grant said renewal on July 1, 1900, provided defendants should have paid the rent and observed the conditions of said lease. It seems clear, in view of her express covenant agreeing to renew upon payment and notice, that she could not have required payment of said difference after such notice, except upon a grant of said renewal. The effect of due notice to renew was to make the covenant to pay the stipulated rent and the covenant to renew mutual covenants, and the right of the plaintiff's

testatrix to recover the stipulated sum without performing or offering to perform her covenant to renew would, technically speaking, depend upon the order in which the covenants were to be performed. Loud v. Pomona Land & Water Co., 153 U. S. 564, 14 Sup. Ct. 928, 38 L. Ed. 822. It is unnecessary to determine whether or not these covenants, after such notice, can be treated as independent, because we are satisfied, as already stated, that, if the lessor had any right to require payment before renewal, she has waived the order of performance of the covenants by her own anticipatory breach. "Where one party to an executory contract renounces it without cause before the time for performing it has elapsed, he authorizes the other party to treat it as terminated, without prejudice to a right of action for damages, and, if the latter elects to treat the contract as terminated, his right of action accrues at once." Marks v. Van Eeghen, 85 Fed. 853, 30 C. C. A. 208; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; In re Stern, 116 Fed. 604, 54 C. C. A. 60.

Even if it be assumed, as claimed by plaintiff, that the contract rights and obligations of the lessor and the original lessees were unchanged by the assignment of the lease to the Columbia Construction Company, yet, after said notice given, we cannot construe the contract as requiring the defendants, on the 1st day of July, 1900, to pay the lessor said difference, not due until that day, in the face of her prior unconditional notification, then in force, that she would refuse to grant the renewal. It may fairly be assumed, in view of the disproportionately large amount to be paid on July 1, 1900, as compared with previous years, that said agreed differential payment was in large measure the consideration for said agreed renewal. The lessor's refusal being wrongful, the lessees were at liberty, on July 1, 1900, either to tender said differential rent and insist on specific performance of the covenant for renewal, or to refuse payment and treat the contract as at an end so far as it remained executory. They have taken the latter course. The lessor, having wrongfully refused to renew, her executor is in no position to demand the performance of the agreement. If the plaintiff has any cause of action against these lessees, it must be supported on a quantum valebat. It cannot be maintained on the theory that he is entitled to a strict performance of the agreement.

In view of these conclusions, it is unnecessary to discuss the third assignment of error.

The judgment is reversed.