## PEARSON v. SULLIVAN.

1. LANDLORD AND TENANT—LEASE—SUBLETTING—NOTICE—FORFEITURE—WAIVER.

   Knowledge of the lessor that, at the time of the making of a lease, part of the leased premises was occupied by a subtenant, *held*, to be a waiver of the clause in the lease prohibiting subletting without the written assent of the lessor.

2. SAME.

   Lessor's action in continuing to receive the rent from month to month for over a year and a half after she had notice that the lessee was subletting part of the leased premises without written assent thereto, *held*, to be a waiver of lessor's right of forfeiture therefor.

3. SAME—LEASE—PERMISSIVE USE—RESTRICTIVE USE.

   The clause in a lease authorizing the use of leased premises for a hotel and bar, *held*, to be permissive rather than restrictive.

4. SAME—PEACEABLE OCCUPANCY—INJUNCTIVE RELIEF.

   On a bill by the lessee to restrain the lessor from interfering with, or preventing the full, continuous, and peaceful oc-

cupation of leased premises by plaintiff or his subtenants, *held*, in the light of the record, that plaintiff is entitled to relief.

5. SAME—ALTERATION OF LEASED PREMISES.

In the absence of express stipulation, a tenant has no right to make material or permanent alterations in the demised premises.

6. SAME—WAIVER.

Where plaintiff's lease will expire May 1, 1920, and although he has the option of renewing same for ten years he has not exercised that right, a court of equity will not compel the landlord to consent to extensive structural alterations, entirely changing the character of said premises, proposed to be made by plaintiff, in the absence of waiver by the landlord of any of the provisions of the lease calling for the premises to be delivered up at the expiration of the term in like condition as when taken, reasonable use and wear thereof, and·damage by the elements excepted.

Appeal from Wayne; Mandell (Henry A.), J. Submitted January 16, 1920. (Docket No. 75.) Decided February 27, 1920.

Bill by Henry A. Pearson against Catherine Sullivan to enjoin the forfeiture of a lease and for other relief. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered.

*Frederick E. McCain,* for plaintiff.

*Beaumont, Smith & Harris* (*Archibald Broomfield,* of counsel), for defendant.

STONE, J. Bill for injunction to restrain defendant from forfeiting a lease, and for other relief. On March 5, 1912, James Sullivan, now deceased, was the owner of the premises involved in this suit, which premises are located on the east side of Woodward avenue, near the intersection of Piquette avenue, in the city of Detroit, and are known as Nos. 1368-1370

Woodward avenue, upon which premises is located a two-story brick building. On that date he leased the premises to the plaintiff for "hotel and bar" for a period of five years from May 1, 1912, at an annual rental of $2,000. The lease gave the plaintiff the privilege of a further period of three years from May 1, 1917, at an annual rental of $2,500; and the privilege of a still further period of 10 years from May 1, 1920, at an annual rental of $3,000. The lease contains the following clause:

"Said party of the second part further covenants that he will not assign nor transfer this lease, or sublet said premises, or any part thereof without the written assent of said party of the first part."

James Sullivan died testate on June 16, 1912, being a little more than three months after the date of said lease, and the defendant, Catherine Sullivan, by virtue of the will of her husband, the said James Sullivan, became, and still is, the sole owner of said premises. The prayer for relief in the amended bill of complaint contains the following:

"That said defendant, Catherine Sullivan, and her representatives and agents, be forever restrained by the order and injunction of this honorable court from interfering with, or preventing the full, continuous and peaceful occupation of the said premises by this plaintiff, or any of his subtenants, either now or in the future; or from making or installing any repairs, alterations or improvements therein during the life of said lease."

As to the conditions existing when the lease was made, and eliminating the testimony of the plaintiff as to matters equally within the knowledge of James Sullivan, deceased, it appears, and is uncontradicted, that the plaintiff had been a tenant and occupant of said premises for some time prior to the making of said written lease; and that he had sublet the south-

erly portion of the building, known as 1368, to a barber named Dorr.

The hearing in this case occurred in September, 1919, and Mr. Dorr, among other things, testified as follows:

"I am engaged in the barber business and am located at 1368 Woodward avenue. I have been there eight years, over eight years. I pay my rent to Mr. Pearson and have done so all this time. * * * That was July eight years ago. It was a barber shop before my time at the same location. During the years 1917 and '16, perhaps, a restaurant was in the rear of my place. A man by the name of Webber was in there about two years I should think, around that time. * * * There are tenants upstairs at the present time other than Mr. Pearson. There were tenants, and have been tenants upstairs to my knowledge, before Mr. Pearson moved out in May. No I have not had any dealings or have ever known any of the Sullivans, or Mr. Sullivan, James Sullivan, or Mrs. Catherine Sullivan, or Mr. Frank Sullivan."

There was no evidence at the hearing that either James Sullivan, Catherine Sullivan, the defendant, or Frank Sullivan, her son and manager, has ever been upon the premises during the life of the present lease. The rent has been collected monthly by an agent of the defendant, or of Frank Sullivan, who seems to have visited the premises for the purpose of collecting the rent.

It is one of the claims of the plaintiff that the occupancy of these premises must have been known to the agent who collected the rent, and that the principal is chargeable with such facts as are known to his agent; and counsel for the plaintiff cites *Ireland* v. *Nichols,* 46 N. Y. at p. 416, and quotes the following language:

"The evidence authorized the judge to assume, that John B. Ireland was the general agent of the plaintiff, in respect to the leasing and care of the premises,

and collecting the rents.  His knowledge of the sub-letting, and the receipt by him of rent, subsequently accruing with such knowledge, had the same effect in waiving the forfeiture as such receipt by the plaintiff personally, with like knowledge, would have had."

Counsel has failed to state that in the *Ireland Case* the plaintiff's agent was the same person who signed the lease; and there was positive testimony that he was told of the under-letting of the premises.  We doubt if a mere agent for the collecting of rent would have authority to waive a clause of the lease, or to so act as that his conduct should operate as an estoppel of the landlord from asserting his rights.  Notice to the agent within the scope and purview of his employment is undoubtedly notice to the principal, but this qualification should be borne in mind.

We confess that it is almost inconceivable, however, that the occupancy of these premises, covering a period under the lease of over six years, should not have been brought to the knowledge of the defendant or her son, who seems to have been her general manager, and both of whom reside in Detroit.  It is undisputed, and appears by competent testimony, that the occupancy of the barber shop and restaurant in the rear thereof, and other occupancies in the upper story, had existed to a greater or less extent during the entire period of the lease; yet it must be said, in the light of this record, that there is no affirmative evidence that James Sullivan, the defendant, or her son and manager, had actual knowledge of such occupancy. There is no doubt that occupancy of the premises by a subtenant at the time of the making of the lease and known to the defendant would be a waiver of that clause in the lease to prohibit subletting without the written assent of the landlord.  In such a case, we think, the principle announced by this court in *Gordon* v. *Insurance Co.*, 197 Mich. 226 (L. R. A. 1918E.

402), should apply. We there held that the insurance company should be estopped from asserting a forfeiture for a condition of the premises, existing at the time of the fire, which existed to the knowledge of the company at the making of the contract. See cases there cited.

It is urged by plaintiff that Mrs. Sullivan, or her son, Frank Sullivan, cannot claim with any show of reason that they did not know that Mr. Pearson had subtenants, for, if they were not aware of the fact, how did it happen that they instructed their attorneys, Messrs. Wurzer & Wurzer, to write the letter, Exhibit 4? That was a letter dated March 1, 1918, and addressed to the plaintiff in this suit. After speaking of rent claimed to have been in arrears, that letter contains the following language:

"We further call your attention to that section of the lease which reads as follows: 'Said party of the second part further covenants that he will not assign nor transfer this lease, or sublet said premises or any part thereof, without the written assent of said party of the first part.' If you have any subtenant or subtenants on said premises, you will kindly remove them at once, otherwise the lease will be canceled and you will be removed as well."

In the 6th paragraph of her answer to the amended bill the defendant said:

"She further says that about March 1, 1918, her agents and attorneys received certain information that the plaintiff was subletting, or might sublet said premises, and that her said agents and attorneys sent a written notice to the said plaintiff on said day calling his attention to said subletting clause, and objecting to any subletting without her written consent, and thereupon the agent of the plaintiff notified this defendant's attorneys that he had no subtenants."

In paragraph 10 she said:

"That when her agents first obtained information

of subletting, on March 1, 1918, they did in her behalf object to the same in writing as aforesaid, and were informed that the plaintiff was not subletting, and she denies that she is now estopped from forbidding or objecting to further subletting."

In the 11th paragraph she denies that the plaintiff believed that she had no objection to subletting said premises, for the reason that he was notified on March 1, 1918, of said objection. And similar language occurs in the 13th paragraph of her answer. It should here be said that there is no evidence in the record that the plaintiff, or his agent, ever notified the defendant, or her attorneys, that he had no subtenants.

It is urged by plaintiff's attorney that even if it should be conceded that this constituted the defendant's first knowledge of the subletting, and it appearing undisputed that the defendant had continued to receive the rent each month since, and was still receiving it at the time of the hearing, that it would constitute a general waiver in itself.

We think that under the authorities there is much force in this position. For over one year and a half after the defendant concedes that she, or her attorneys, had notice of subletting she continued to receive the rent from month to month down to the time of the hearing of this case. The conditions here appear to have been continuing and constant. It was not a case of only temporary subletting for a short period, and by special arrangement, but a general, open and notorious condition. Upon this point the plaintiff cites the following cases: *Barrie* v. *Smith,* 47 Mich. 130, 132; *Patterson* v. *Carrel,* 171 Mich. 296; *Conger* v. *Duryee,* 90 N. Y. 594, 599. There the court of appeals of the State of New York said:

"A single condition dispensed with is dispensed with forever. Receiving rent after the forfeiture waives the forfeiture and affirms the lease, freed from the condition."

Counsel also cites *Murray* v. *Harway*, 56 N. Y. 337; 24 Cyc. p. 970, and the following language in 18 Am. & Eng. Enc. Law (2d Ed.), at p. 382:

"It may be stated as a general rule that when the lessor, after knowledge of the breach of the covenant or condition for which he could enforce a forfeiture, expressly or impliedly, recognizes the continuance of the tenancy, he thereby waives the forfeiture for such breach, and is afterwards precluded from asserting it. *   *   * But it seems that actual knowledge is not necessary where the cause is such that the lessor should have known it, and it is equally within the cognizance of the landlord and tenant. *   *   * Where his act amounts to the waiver of a forfeiture or a recognition of the continuance of the tenancy, he is precluded from asserting that it was not his intention to waive the forfeiture."

Counsel also cites upon this point *Ireland* v. *Nichols, supra; Collins* v. *Hasbrouck*, 56 N. Y. 157, the latter illustrating a case of subletting by special permission of the landlord, such as is found in *Wertheimer* v. *Wayne Circuit Judge*, 83 Mich. 56; *Warner* v. *Cochrane*, 63 C. C. A. 207, 128 Fed. 553. See, also, 18 Am. & Eng. Enc. Law (2d Ed.), at p. 386.

It is also urged by plaintiff's counsel that the business which plaintiff conducted on the premises in question, to-wit: that of a saloon, is now unlawful, and to prevent him from continuing to sublet will in effect work a forfeiture of his lease, which is not favored by the courts. We hardly need cite authorities in support of the position that the courts do not favor a forfeiture. We think that the plaintiff is entitled to possession and use of the premises during the term of his lease, relieved of the clause against subletting without the written consent of the party of the first part in the lease. The better doctrine seems to be, that a provision in a lease authorizing the use of the premises for a specified purpose is generally re-

garded as permissive instead of restrictive, and does not limit the use of the premises by the lessee to such purpose. 16 R. C. L., title "Landlord and Tenant," p. 735, and see the following cases there cited: *Burr* v. *Spencer*, 26 Conn. 159 (68 Am. Dec. 379) ; *Hayton* v. *Brewing Co.*, 66 Wash. 248 (119 Pac. 739, 37 L. R. A. [N. S.] 432).

We are of the opinion that the plaintiff is entitled to have the defendant and her representatives and agents restrained by the decree and injunction of this court from interfering with, or preventing the full, continuous and peaceful occupation of the said premises by the plaintiff, or his subtenants, either now or in the future. To this extent we think the plaintiff, in the light of this record, is entitled to relief.

This brings us to what we consider the most important question in the case: Should the defendant be restrained from interfering with the plaintiff in making or installing repairs or alterations under the lease? There is no claim of the plaintiff that the defendant has waived any of the provisions of the lease in this respect. By the terms of the lease the plaintiff is to keep the premises, and every part thereof, in as good repair, and at the expiration of the term yield and deliver up the same in like condition as when taken, reasonable use and wear thereof, and damage by the elements excepted. The general rule, as stated in 24 Cyc. at p. 1094, is as follows:

"In the absence of express stipulation, a tenant has no right to make material or permanent alterations in the demised premises." See cases there cited

The doctrine seems to be well established that a tenant cannot, without the consent of the landlord, make material changes or alterations in a building to suit his taste or convenience, and if he does so, it is waste. And any material change in the nature and character of the buildings made by the tenant is waste

although the value of the property should be enhanced by the alterations. See *Brock* v. *Dole,* 66 Wis. 142 (28 N. W. 334), and numerous cases there cited. See, also, 16 R. C. L. p. 733, and cases cited.

In the *Brock Case* the court quotes from *Jackson* v. *Andrew,* 18 Johns. (N. Y.) 434, the following language:

" 'That a tenant cannot, under the pretense of advantage to the reversioner, change the nature of the buildings; and many cases show that such changes, though beneficial, would be waste.

" 'The ground on which alterations in demised premises, not prejudicial to the value of the property, have been declared waste is, that they change the identity of the estate.' Willard's Eq. Jur. 373."

The taking down of partitions, the making of two rooms into one, the putting up of permanent partitions, any change in the structural character of the premises, is waste. *Abel* v. *Wuesten,* 141 Ky. 766 (133 S. W. 774); 143 Ky. 513 (136 S. W. 867, Ann. Cas. 1912C, 389).

In this case a peculiar condition exists, and upon this branch of the case the plaintiff's claim for relief may be termed a "fishing expedition." The plaintiff's present term expires on the first day of May, 1920. He has not exercised the option or privilege of claiming or asking a continuation of the terms of the lease after that date. While, by the bill of complaint, he claims to be negotiating with a party known as the Ueata Lunch Company, it appears that such negotiation hinges upon obtaining the consent of the owner to the alterations proposed, and that there is no existing contract shown between the plaintiff and said company, but it rests in a proposition contingent upon this court compelling the defendant to consent to the alterations proposed. Those alterations are very extensive. The said lunch company proposes to tear out

the present store front and put in a new one princi-
pally of tile, granolithic floors throughout, tile walls,
and metal ceilings, and bricking in of the space under
the rear porch, thus increasing the size of the store
proper. They propose to change or remove the center
or north stairway, and to take out and change certain
partitions and stairways. This, in our judgment, will
change the structural character of the building.
There is nothing in the evidence, or in the lease, pre-
venting the plaintiff from continuing on the premises
any business contemplated by the lease; but the lunch
company will not make this lease without the written
consent of the defendant to the proposed alterations.

In her answer to the amended bill of complaint the
defendant says:

"That she does not wish to have structural changes
made in said premises; that she does not wish to have
said premises converted, so that they can be used only
for restaurant purposes; that she does not wish to
permit any subtenant to demolish a portion of said
premises and then be given the right to abandon the
same with impunity; that it might impose mechanics'
liens on her title, which she would be required to re-
move; that she has no security whatever under said
lease for any default in the making of said alterations,
or for any damages caused to the premises by reason
of the same, or from any mechanics' liens; that said
alterations and improvements probably would in-
crease the assessed value of the premises without in-
creasing her revenue under the lease; that she also
owns the premises adjacent to and directly north of
the premises involved in this suit, and the same are
under a nine or ten year lease to the Peoples State
Bank, and that the proposed alterations might jeo-
pardize said premises and said lease."

It is significant that the plaintiff himself testified
as follows:

"Now in this lease the first term is a period of five
years, I believe the period would expire May 1, 1917,

then I have an option for a further period of three years. Sure, that option I have exercised. I have signified my willingness to keep the premises for that three-year period, that period will expire May 1, 1920. As to the lease containing a condition for a further period of ten years after May 1st, there, of course, has been no exercise of that option by me.

"*Q*. So that as the matter now stands, both parties are bound under the lease continuing until May 1, 1920?

"*A*. I have the right, before May 1, 1920, to extend the time for a period of ten years more. That is a right that exists in me, but does not exist in Mrs. Sullivan."

So it appears that there is no existing or subsisting contract between the plaintiff and defendant for any period beyond May 1, 1920. Whether the plaintiff shall exercise this option depends no doubt upon the result of this lawsuit. We do not recognize the right of a party to thus speculate upon the result of a litigation where there is no existing contract between the parties. In our opinion it would be unjust and inequitable to compel the defendant, under the circumstances stated, to consent to the structural changes proposed in this record. As to that branch of the case, we think the plaintiff should be denied relief.

This court has no power or authority to compel the plaintiff to exercise this right or option. The plaintiff may exercise it or not as he chooses; but he asks us to say that, if he does exercise that right, then that he or his subtenant shall have the right to make the changes and alterations proposed, and that the defendant be ordered to consent to such changes.

The decree of the court below dismissing the bill will be reversed; the plaintiff will be given the relief herein indicated, and to that extent only, to-wit: to restrain the defendant from forfeiting the lease by reason of the clause of the lease heretofore set forth, which clause we hold has been waived by the conduct

of the defendant and that she should be estopped from enforcing the same. No costs will be awarded to either party.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, and SHARPE, JJ., concurred. BIRD, J., did not sit.