## AMOS v. CUMMINGS.
### No. 810.

• Municipal Court of Appeals for the District of Columbia.

Argued June 20, 1949.

Decided July 7, 1949.

688

A. Slater Clarke, Washington, D. C. (Alton S. Bradford, Washington, D. C., on the brief), for appellant.

Arthur F. Carroll, Jr., Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This is an appeal by a tenant from a judgment for possession in favor of the landlord. The house in question is located in that part of the District known as Georgetown. It was formerly zoned "First Commercial" and the basement was used for commercial purposes. Prior to execution of the lease here involved the property was rezoned "Residential." The landlord has sought to preserve the right to use the basement for commercial purposes as a nonconforming use under the zoning law[1] and to that end secured a certificate of occupancy for the continued use of the basement for commercial purposes. The property was rented to appellant for a term of one year, the lease providing that the tenant would not use the premises "for any other purpose than Commercial and Home."

The parties, as the trial court found, "entered into the agreement with the understanding that the tenant was to use the basement for a fashionable dress shop." Sometime after execution of the lease the landlord learned that the tenant had not opened the dress shop but instead was renting the upper portions of the building to roomers and using the basement as a dining room for such roomers. Thereupon the landlord brought this action for possession on the ground that the lease was breached by the tenant's failure to use the premises for commercial purposes.[2]

After trial without a jury the trial court on its findings of fact concluded "that there has been a violation of the tenancy agreement between the parties in that the tenant has broken her obligation with respect to use of the basement for commercial purposes and is attempting to change the commercial character of the premises by using the entire property as housing accommodations, and therefore the plaintiff is entitled to recover possession of the premises."

The first error assigned is that the lease was in violation of the District of Columbia Emergency Rent Act.[3] This argument is based on the contention that the premises, or at least the greater portion of them, constituted housing accommodations within the meaning of the Rent Act, that no maximum rent ceiling had been established for the housing prior to the lease, either by law or by determination of the Rent Administrator, that the premises were not rented as housing accommodations on November 30, 1943, that no application for determination of a maximum rent ceiling had been filed prior to executing the lease, and that therefore the lease was made in violation of the Rent Administrator's General Order No. 11, effective November 30, 1943. General Order No. 11, in part, provides:

"Ordered, that for all housing accommodations within the District of Columbia not rented on January 1, 1941 or within the year ending on that date and now rented, an application for the determination of a maxi-

[1] Code 1940, § 5—419. See Wood v. District of Columbia, D.C.Mun.App., 39 A.2d 67.

[2] Another ground was set forth but is not here involved. The complaint also named as defendant the tenant's husband, who although named in the lease did not sign it. He is not involved in this appeal.

[3] Code 1940, Supp. VI, §§ 45—1601 to 45—1611.

mum rent ceiling shall be filed in this office immediately unless such an application is already on file. For all such housing accommodations not now rented, such an application shall be filed before any future tenancy begins."

■ Many of the facts on which appellant's argument is based do not appear in the record as there is no statement of proceedings and evidence, and the only facts of record are those stated in the trial court's memorandum. However, assuming those facts, and assuming that before making the lease the landlord should have filed with the Administrator an application for determination of a maximum rent ceiling, it does not necessarily follow that appellant's contention is sound. It is appellant's argument that a lease made in violation of General Order No. 11 is unenforceable and confers no right on the landlord. The tenant would apply here the principle laid down in Hartman v. Lubar, 77 U.S.App.D.C. 95, 133 F.2d 44, 45, certiorari denied, 319 U.S. 767, 63 S.Ct 1329, 87 L.Ed. 1716, that "an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer." In that case, however, the court was dealing with the Loan Shark Law which expressly declares certain acts "unlawful and illegal." The Administrator's General Order does not go so far. Indeed, it makes no declaration of the effect of its violation. Nor does the Rent Act declare that a lease made in violation of the Act or order of the Administrator shall be unenforceable in its entirety. The Act is primarily concerned with protecting a tenant's right to possession so long as he pays rent and does not violate the obligations of his tenancy and in maintaining rent ceilings and service standards. Means for enforcing these purposes are afforded by the Act. To declare that a lease made in violation of a general order is void in its entirety and that the landlord has no rights under it would in effect add a new penalty not provided by the Act. There is nothing in the Act declaring such a lease void and we find no ground for holding it void on the grounds of public policy.[4] A tenant's rights may be fully protected without such a holding.

■ The provision requiring the tenant to use the basement for commercial purposes was a reasonable one. The nonconforming commercial use in a residential district enhances the value of the property and the landlord had the right to insist that this use be maintained in order that it not be lost by reason of nonuse or abandonment. It is plain from the trial court's findings that the property was rented on the express understanding that the commercial use of the basement would be continued by operation therein of a dress shop and that the tenant totally disregarded this agreement and attempted to change the commercial feature of the building by using the entire building for housing accommodations.

This case is distinguishable from Congressional Amusement Corporation v. Weltman, D.C.Mun.App., 55 A.2d 95, 96, wherein we held that a somewhat similar covenant restricted the use of the premises but did not require that they be used at all. In the first place, under the principle there laid down, there is nevertheless a violation here by the use of the basement for a purpose other than the one specified. In the second place, there is a showing here, absent in the other case, that it was the intent of the parties that the use of the basement was not only restricted to commercial use but was affirmatively required. And there is the additional showing here that failure of the tenant to put the basement to the specified use might result in serious loss to the landlord. In the Weltman case we said: "The situation would be different if lessees' conduct had resulted in actual waste to the premises." The tenant's conduct here could result in a loss greater than mere waste.

The other two assignments of error are that the trial court was in error in holding that the premises were not under the jurisdiction of the Rent Administrator and not subject to the maximum rent ceiling established by the Administrator, and that the

---

[4] Cf. John E. Rosasco Creameries v. Cohen, 276 N.Y. 274, 11 N.E.2d 908, 118 A.L.R. 641.

trial court was in error in holding that the commercial character of the basement controlled the housing accommodations. The record does not disclose that the trial court made either of these rulings or that such rulings were necessary to the holding that the tenant had violated an obligation of her tenancy and that the landlord thereby became entitled to possession.

Affirmed.

CLAGETT, Associate Judge.

I concur in the result arrived at in the foregoing opinion and also, in general, in the reasons given therefor, but I believe one part of the opinion should be amplified. In the opinion there is quoted in part General Order No. 11 of the Rent Administrator, effective November 11, 1943, requiring that before any future tenancy begins an application for the determination of a maximum rent ceiling must be filed with the Rent Administrator. In distinguishing Hartman v. Lubar, 77 U.S.App. D.C. 95, 133 F.2d 44, the court calls attention to the fact that the Loan Shark Law which was there involved expressly declares certain acts "unlawful and illegal." The opinion then proceeds to state "The Administrator's General Order does not go so far. Indeed, it makes no declaration of the effect of its violation. Nor does the Rent Act declare that a lease made in violation of the Act or order of the Adminis-

trator shall be unenforceable in its entirety." While this statement is literally true, it does not tell the whole story. Section 5(a) of the Rent Act, Code 1940, Supp. VI, § 45—1605(a) provides: "It shall be unlawful, regardless of any agreement, lease, or other obligation heretofore or hereafter entered into, for any person to demand or receive any rent in excess of the maximum-rent ceiling, or refuse to supply any service required by the minimum-service standard, or otherwise to do or omit to do any act in violation of any provision of this chapter or of any regulation, order, or other requirements thereunder, or to offer or agree to do any of the foregoing." Thus by reading the regulation and the Act together, I have no doubt that it was and is unlawful for anyone to rent housing accommodations not rented on January 1, 1941, or within the year ending on that date, without first making application to the Rent Administrator for the determination of a maximum rent ceiling. It does not follow, however, that all of the provisions of a rental agreement made in violation of the statute and regulation are illegal and unenforceable. There was nothing contrary to the statute or the Administrator's Orders making unlawful an agreement that the tenant should use the basement for commercial purposes. It follows, I believe, for the reasons stated by the court, that this part of the agreement was enforceable.