Bernard O. STEVENS and Estelle E.
Stevens, Plaintiffs,

v.

MOBIL OIL CORPORATION, Defendant.

Civ. A. No. 75–70857.

United States District Court,
E. D. Michigan, S. D.

March 19, 1976.

James D. Wines, Brighton, Mich., for plaintiffs.

Donald B. Miller, Delmer C. Gowing, III, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CORNELIA G. KENNEDY, District Judge.

This action was instituted by plaintiffs to recover for alleged waste committed by defendant, which is the lessee of property owned by plaintiffs in the City of Detroit. Defendant has filed a motion for summary judgment. A hearing was held on January 12, 1976, and the parties have supplied supplemental memoranda to the Court.

Plaintiffs leased the property involved, on which was located a service station, to defendant on November 29, 1956. The lease was extended twice. The last extension, dated March 25, 1971, extended the lease until November 30, 1976.

On September 5, 1972, the City of Detroit passed an ordinance, No. 726–G (effective October 12, 1972), which provided that any service station not open for business for 120 consecutive days would be deemed abandoned, and further provided for demolition unless within specified periods the station was reopened or converted to an approved

alternate business. The affidavit of defendant's real estate manager for this area, Thomas Pence, states that defendant first became aware of the ordinance in June 1974.

Defendant decided to discontinue operation of the station on March 18, 1974, and so informed plaintiffs by letter on April 2, 1974. Apparently, actual operation had stopped when the sublessee who had operated the station for many years left the premises on December 31, 1973.

The City of Detroit issued orders regarding the property pursuant to the ordinance on August 16, 1974. After a period of time, defendant secured permission of the Detroit Board of Zoning Appeals to use the station as an auto reconditioning center. Defendant sought plaintiffs' approval of a proposed sublease for that purpose, but plaintiffs refused to consent. Defendant then declared that it considered the refusal to consent to the sublease a breach of the lease, and ceased to pay rent on March 31, 1975.

By its terms, the Zoning Board's approval of the alternative use as an auto reconditioning center expired on March 31, 1975, and, presumably, the original demolition order was thereby reinstated.

Plaintiffs commenced this action on May 9, 1975, claiming that the conduct of the defendant constituted waste under M.S.A. § 27A.2919. That section states:

(2)(a) Any guardian, tenant in dower, life tenant, or tenant for years who commits or suffers any waste during his term or estate, to the lands, tenements, or hereditaments, without having a lawful license to do so, is liable for double the amount of actual damages.

The complaint makes allegations of two sorts regarding the conduct of the defendant that plaintiffs believe constitute waste:

(1) That defendant removed equipment, boarded up the building and painted the building gray; and

(2) That defendant's conduct has led to the loss of the right to use the property as a service station, thus reducing its value.

The parties have indicated that the building involved does not comply with applicable set-back and lot size requirements under the City of Detroit's zoning ordinance. The present rules regarding set-back and minimum lot size were adopted prior to the last extension of the lease[1] as part of the general zoning ordinance, No. 390–G, which became effective on December 12, 1968. The set-back and minimum size rules were contained in section 94.0100 of ordinance No. 390–G.[2]

The operation of this station after 1968, therefore, constituted a nonconforming use of the property. The zoning ordinance provides that the right to continue the noncomforming use is lost if the property is vacant for two years. Ordinance No. 390–G, § 52.0300.

Plaintiff's first claim is that the actions of the defendant that had impact on the physical structure of the station constitute waste. The leading Michigan case regarding waste in connection with modifications of buildings is *Pearson v. Sullivan,* 209 Mich. 306, 176 N.W. 597 (1920). The Michigan Supreme Court stated:

The doctrine seems to be well established that a tenant cannot, without the consent of the landlord, make material changes or alterations in a building to suit his taste

---

1. It should be noted that the lease, as modified by the August 3, 1961 extension, gave defendant the option to further extend the lease. Thus, the extension that took effect after the change in the zoning ordinance was effected unilaterally by defendant. See letter dated March 25, 1971, from Thomas Pence to plaintiffs, attached to defendant's motion.

2. The ordinance relating to service stations that adopted the abandoned station provisions also provided that in areas zoned for general business, as is the property involved in this action, use of the land for a service station would now be subject to approval, whereas in the past it had been usable for that purpose as of right. See Ordinance No. 726–G. The applicable minimum lot size and set-back rules were not changed, however.

or convenience, and, if he does so, it is waste. And any material change in the nature and character of the buildings made by the tenant is waste although the value of the property should be enhanced by the alterations.

209 Mich. at 314, 176 N.W. at 600. In *Pearson,* the tenant proposed to make very extensive changes, including remodeling the storefront, removing and rearranging stairways and partitions, and bricking in a porch area to expand the size of the store.

The actions alleged to constitute improper physical alterations of the property in the instant case are described in paragraph 19 of the complaint:

. . . the defendant . . . did in fact paint the premises dark gray, boarded up the premises, removed the underground tanks, pumps, signs and all other necessary equipment to operate the premises as a service station, which in itself was for the convenience and use of the defendant, thereby creating waste by the material change in the nature and character of the building made by the defendant.

■ Painting the premises and boarding up the premises would not constitute a material change since those acts would not reduce the value of the lessors' interest. Unauthorized removal of equipment, including the items mentioned, might well constitute waste. However, such actions were expressly permitted here by the terms of the lease.

Paragraph III of the lease states, in part: Tenant may erect and install on the said premises such buildings, improvements and equipment as it may require for the conduct of its business thereon; may remove trees and shrubbery, may cut curbs, and construct and maintain and use driveways over, upon and across said premises, for ingress and egress of vehicles and persons. All buildings, improvements and equipment erected, installed or owned by tenant shall not become a part of the real estate but shall be and remain the property of Tenant, and Landlord

grants unto Tenant full right to remove same at any time while this lease is in effect or any renewal or extension thereof . . . .

The affidavit in support of the motion for summary judgment states that defendant removed "*its* property from the station, including underground storage tanks, gasoline pumps, identifying signs, and related equipment." ¶ 10 (emphasis added). Plaintiff's affidavit in response indicates that substantial amounts of equipment that were on the premises in 1956 were sold to defendant at the time the parties entered into the lease. Affidavit of plaintiff BERNARD STEVENS, ¶ 10. The deposition of BERNARD STEVENS also contains statements admitting that defendant had installed the equipment that it later removed. See deposition of BERNARD STEVENS, pages 26–28.

Thus, the physical changes made in the property do not constitute waste.

The more novel claim of plaintiffs' is that the actions of the defendant have resulted in the loss of the right to use the premises as a service station, and that the loss of the right to use premises for a particular commercial purpose can constitute waste.

■ It is difficult to tell whether the claim is really for waste or whether it is a claim that the terms of the lease have been breached. Both theories should be discussed, however, since even though plaintiffs have not pleaded that they claim breach of lease (plaintiffs' affidavit in opposition to the motion asserts that defendant has breached the lease) if the Court concludes that the facts alleged in the complaint, together with the depositions and affidavits and accompanying exhibits reveal that such a claim is available, it could exercise its discretion to permit an amendment to allege such a cause of action.

Essentially, plaintiffs' argument is that the actions of the defendant in ceasing to operate a service station lead to the issuance of the demolition order issued by the City of Detroit, and that defendant's subsequent conduct has resulted in the loss of the

right to conduct a service station business on the property or at least the right to do so in the manner that the business was conducted in the past (because of the presumed loss of the right to continue the nonconforming use).

■ There are a number of disputes regarding who is at fault for permitting the institution of the demolition order, who was responsible for its remaining in effect, and whose duty it was to take steps to comply with the order. Indeed, the factual record at this point would not permit a finding as to whether the right to use the premises as a service station has in fact been lost. In consideration of this motion, the Court must resolve disputed matters in favor of the plaintiffs and against the moving party. Thus, for the purpose of ruling on this motion for summary judgment, the Court must assume that the defendant's ceasing to operate a service station on the premises has resulted in the loss of the right of plaintiffs to use the premises for a service station. The determination of the motion depends upon whether either the duty to avoid committing waste to the premises or the lease imposes an obligation on defendant to preserve the plaintiff's ability to operate a service station on the premises at the end of the lease.

■ Defendant strenuously maintains that liability for waste can be imposed only for physical damage to the leased premises.

The basic structure and history of the M.S.A. § 27A.2919 supports that view. The prior version of the statute, C.L.1948 § 692.-401, described waste more specifically:

If any guardian, or any tenant by the courtesy, tenant in dower, or for a term of life or years, or the assigns of any such tenant, shall commit or suffer any waste during their several terms or estates, of the houses, gardens, orchards, lands or woods, or of any other thing belonging to the tenements so held, without having a lawful license in writing so to do, they shall respectively be liable to an action on the case for such waste.

The committee comments to the current waste statute, which was enacted as part of the Revised Judicature Act of 1961, indicates that the present section M.S.A. § 27A.2919 was drawn from the prior statute. The comments reveal no intention to change the content of the term "waste".

The Revised Judicature Act combined the provisions relating to actions for damage to land and for waste in the same section. The damage to land portion of statute spells out the types of damage fairly specifically:

(1) Any person who:

(a) cuts down or carries off any wood, underwood, trees, or timber or despoils or injures any trees on another's lands, or

(b) digs up or carries away stone, ore, gravel, clay, sand, turf, or mould or any root, fruit, or plant from another's lands, or

(c) cuts down or carries away any grass, hay or any kind of grain from another's lands without the permission of the owner . . . is liable to the owner of the land . . . .

M.S.A. § 27A.2919.

The committee comments indicate that the damage to land and waste sections were regarded as similar:

This section combines the action of trespass, actions for injunctions against trespass, actions for waste, and actions for injunctions against waste. There seems to be no valid reason for keeping these actions separated any longer, either on the basis of the distinction between law and equity or on the basis of the distinction of the defendant being a stranger to the land or the person in possession of the premises.

Committee Comment to M.S.A. § 27A.2919.

■ As the committee comment suggests, the principal distinction between trespass to land and waste has been the character of the presence of the defendant on the land. See also *Camden Trust Co. v. Handle,* 132 N.J.Eq. 97, 26 A.2d 865, 154 A.L.R. 602 (1942):

It is generally recognized that the primary distinction between waste and trespass is that in the former case the injury is done by one rightfully in possession. 132 N.J.Eq. at 102, 26 A.2d at 869, 154 A.L.R. at 608.

The structure of the remaining portions of the section is also suggestive that it is aimed at physical damage. For example, M.S.A. § 27A.2919(4) states, in part:

> After the commencement of any action based on a claim for damages for waste . . . the defendant shall not make any waste of the land in demand or premises in question during the pendency of the action. If the defendant commits, threatens to commit, or makes preparations to commit waste the court in which the action is pending . . . may make, on the application of the plaintiff, an order restraining the defendant from the commission of any waste or further waste of the land in demand or premises in question. . . .

There are similar provisions for restraining orders relating to land that has been attached or levied upon or that has been sold at an execution sale. M.S.A. § 27A.2919(5)–(6).

The plaintiffs cite no authority for the proposition that loss of a commercial use of leased premises can constitute waste. All of the Michigan waste cases of which the Court is aware have involved physical damage to the premises. There are some short discussions of the subject in cases from other jurisdictions. See, e. g., *Dipson v. Interstate Theatre Corp.*, 278 App.Div. 1016, 106 N.Y.S.2d 107 (1951) (refusing to order certain discovery on the ground that lessor cannot recover damages for waste for injury to the reputation, goodwill or other intangibles associated with the property); *Delano v. Smith*, 206 Mass. 365, 92 N.E. 500, 501 (1910):

> [Waste] generally consists in some definite physical injury. This is shown by reference to the earlier definitions. . . On principle it follows that mere injury to the reputation of real estate or the

supposed diminution of its value resting on whimsical or sentimental grounds or arising from dictates of custom or taste do not constitute waste.

In *Delano*, the Court concluded that the infestation of premises with smallpox germs could constitute waste.

In several Michigan cases, plaintiffs have claimed that the failure to pay taxes on premises could constitute waste. However, the Supreme Court denied the relief sought without really reaching the question of whether a waste theory was appropriate. See *Denby v. Ozeran*, 255 Mich. 477, 238 N.W. 218 (1931); *Union Guardian Trust Co. v. Rau*, 255 Mich. 324, 327, 238 N.W. 166, 167 (1931):

> It is urged that "nonpayment of taxes by mortgagor in possession constitutes waste," and that a receiver may be appointed to protect the mortgagee therefrom. Where the mortgagee is a trustee, with no financial interest in the mortgage, such protection may be deemed necessary. But in the case of a mortgagee such as we have here, and considering the time which must elapse before a tax title may be acquired, we see no reason for affording such protection by the appointment of a receiver.

There are a few old cases from other jurisdictions that have concluded that failure of a tenant or other person rightfully in possession to pay taxes or other obligations that might lead to liens attaching to the property could constitute waste. See, e. g., *Hanley v. Wadleigh*, 88 N.H. 174, 186 A. 505 (1936); *Nielsen v. Heald*, 151 Minn. 181, 186 N.W. 299 (1922).

These cases are not actually inconsistent with the rule requiring physical damage, because the result of failure to pay taxes is the loss of all the remainderman's rights in the property—the equivalent of the complete physical destruction of the property so far as he is concerned.

The better analysis is that employed in cases such as *Camden Trust Company v. Handle*, 132 N.J.Eq. 97, 26 A.2d 865, .154 A.L.R. 602 (1942). There, a mortgagor had

failed to pay accrued taxes and the mortgagee sued for damages on a waste theory. The Court observed that lacking some special provision in a lease, the tenant would not be obligated to pay taxes, yet he would still be subject to the duty to avoid waste. Thus, the failure to pay taxes in the absence of an agreement to do so could not constitute waste. If the lease contained a provision that the tenant should pay the taxes, then he would certainly be obligated to do so, but liability for failure to pay taxes would arise from the provisions of the lease and not from the duty to avoid waste.

■ Accordingly, the Court concludes that M.S.A. § 27A.2919(2) should be construed as providing for liability for waste only in the event of physical damage, and that any liability for loss of a commercial use must be founded upon some express or implied term of the lease.

As noted above, plaintiffs' complaint does not claim that the lease obligated defendant to continue to operate a service station or otherwise preserve plaintiffs' right to use the premises for that purpose. However, the briefs and oral arguments of the parties have raised this question and the Court is of the opinion that the present record permits a decision regarding whether such a claim can be stated with regard to this lease.

■ For the reasons set out below, the Court is of the opinion that even if the complaint is taken as stating such a claim under the lease, the defendant is entitled to summary judgment.

■ The general principle is that a lessee is not obligated to operate a particular business on the leased premises. See generally *Weil v. Ann Lewis Shops, Inc.*, 281 S.W.2d 651 (Tex.Civ.App.1955); *Davis v. Wickline*, 205 Va. 166, 135 S.E.2d 812 (1964).

Specific language to the contrary can impose such a requirement. However, many courts have construed even very strong language as only restricting the use of the property, and not as mandating that the property be used in fact for the specified purpose. See, e. g., *Congressional Amusement Corporation v. Weltman*, 55 A.2d 95 (D.C.Mun.Ct.App.1947) ("That he will use said premises for the sale of alcoholic beverages and other items usually associated with the sale of liquor for 'Off Sale' consumption and for no other purpose whatsoever."); *Davis v. Wickline*, 205 Va. 166, 135 S.E.2d 812 (1964) ("the premises hereby leased shall be used for the purpose of a drug store and for no other purpose—and that during the term of this lease or any renewal thereof the lessee shall operate said premises as a drug store."). The Michigan Supreme Court has called this the "better doctrine." *Pearson v. Sullivan*, 209 Mich. 306, 313–14, 176 N.W. 597 (1920).

■ The particular lease involved here does not approach the language of these cases. Nowhere does the lease actually say that defendant shall conduct a service station business. There are two specific references to a service station business. The "TO HAVE AND TO HOLD" section of the lease sets the rent to be paid at

one and five tenths (1.5) cents per gallon on each and every gallon of motor fuel handled . . . provided, however, that the rental shall not be less than Five Hundred Fifty ($550.00) Dollars per month, nor more than Six Hundred Fifty ($650.00) Dollars per month.

Paragraph IV of the lease states:

If, at any time during the term of this lease or any renewal or extension thereof, Tenant or any of its subtenants, through no fault or neglect on their part, are unable to obtain any license or permit required by law or municipal ordinance for the storage and sale of gasoline or other petroleum products or by-products or other motor fuel, on said premises, or if any existing license or permit shall be cancelled or revoked, or if Tenant is prevented by operation of law or enjoined from using said premises, or any part thereof for the storage and sale of gasoline or other petroleum products or by-products or other motor fuel Tenant shall have the right, at its option, to terminate this lease on thirty (30) days notice to the Landlord.

The language of paragraph III, set out on page 812, *supra*, (regarding the right of the defendant to remove the equipment from the premises during the term of the lease), would seem to resolve against plaintiffs the question regarding whether the lease bound defendant to operate. Nothing in either paragraph IV or the "TO HAVE AND TO HOLD" section indicates anything to the contrary. In addition, the language of paragraph IV, which gives defendant the option to continue to occupy the premises even if it could not obtain a permit to operate a service station strengthens this conclusion.

While it undoubtedly was the contemplation of the lease that defendant would in fact operate a service station on the premises, the terms of this lease do not so require. Unless some special circumstance can be found to establish that a duty to continue operations existed, defendant was not bound to operate a service station.

A variety of unusual circumstances have prompted Courts in various jurisdictions to find that there was a duty to continue operations under various lease provisions, absent a specific agreement to do so. First, a factor often mentioned (but rarely relied upon) is the existence of a percentage lease, that is, a lease where the rent is, in whole or in part, based on the volume of sales. See, e. g., *Palm v. Mortgage Investment Co.*, 229 S.W.2d 869 (Tex.Civ.App.1950). The critical question in such cases is whether the minimum rent set is more than "nominal." "If it is, the existence of a percentage lease is held not to constitute a requirement that the business be operated. *Cousins Investment Co. v. Hastings Clothing Co.*, 45 Cal.App.2d 141, 113 P.2d 878 (1941).

Courts are quite reluctant to find minimum rentals to be nominal. See, e. g., *Lippman v. Sears, Roebuck & Co.*, 271 P.2d 891 (Cal.App.1954). (Minimum rental was $285 per month; for the year preceding that involved in suit total rental payment

$20,844.82; trial court finding the minimum rental was only nominal reversed).

What constitutes a nominal rent cannot be specified with exactness; however, where, as in the present case, the minimum rent of $550 is only $100 less than the maximum rent, it cannot be said that the minimum is nominal and that the rent provision indicates an intention of the parties that defendant would be required to operate a service station.

Other miscellaneous circumstances have been found to require interpretation of leases as imposing a duty to continue a particular use. For example, in *Ingannamorte v. Kings Supermarkets, Inc.*, 55 N.J. 223, 260 A.2d 841 (1970), the premises leased as a supermarket were located in a shopping center, where the value of each parcel would be expected to be influenced by the presence of potential customers coming and going in connection with other stores and the supermarket was the key operation. These factors led the Court to conclude that the lease required that the lessee continue to operate a supermarket.[3]

One Michigan case that is relevant to this issue is *Knoop v. Penn Eaton Motor Oil Co.*, 331 Mich. 693, 50 N.W.2d 329 (1951). That lease provided that the premises were: "to be used as a filling station for the sale of gasoline, oil, automotive supplies and accessories and any and all other merchandise handled in that vicinity by filling stations." 331 Mich. at 695, 50 N.W.2d at 330.

Plaintiffs apparently conducted their business in a manner that encouraged the expansion of general garage service and discouraged expansion of gasoline sales. Defendant believed plaintiffs were violating the lease and evicted plaintiffs who in turn sued for damages for wrongful eviction.

The Court concluded that the use of the premises in a way not authorized by the lease must not be injurious to the landlord's interest. It held that the emphasis on gen-

---

**3.** The lease provided that the store was "to be used and occupied only for a supermarket . . . ."

eral garage work was harmful to the lessor and justified eviction.

The decision is more directed to the question of whether the emphasis on the general garage business was a violation of the lease, rather than the issue of whether the lease obligated plaintiffs to sell gasoline. However, it is illustrative of the way in which the Michigan Supreme Court approaches interpretation of such lease provisions.

There are very few cases dealing with the duty to operate a business in the context of zoning restrictions. In *Amos v. Cummings*, 67 A.2d 687 (D.C.Mun.Ct.App.1949) a lease was executed that provided that the premises would not be used "for any other purpose than Commercial and Home." Lessor had operated a business in the basement of the premises. Prior to the execution of the lease, the property was rezoned "Residential." The lessor had taken certain steps to preserve the non-conforming use. After a time lessee ceased to use the basement for commercial purposes and lessor brought an action for possession for breach of lease.

The trial court found that the parties "entered into the agreement with understanding that the tenant was to use the basement for a fashionable dress shop."

On appeal, the judgment for the lessor was affirmed. The court said:

> The provision requiring the tenant to use the basement for commercial purposes was a reasonable one. The nonconforming commercial use in a residential district enhances the value of the property and the landlord had the right to insist that this use be maintained in order that it not be lost by reason of nonuse or abandonment.

67 A.2d at 689. The Court distinguished the case from others in which there had been found no requirement that the premises be used at all by the tenant.

The reluctance of the courts to require a lessee to operate a business in leased premises absent specific language to do so is demonstrated in *Powell v. Socony Mobil Oil Co.*, 113 Ohio App. 507, 179 N.E.2d 82 (1960), a case which contained many of the features of the instant suit. In that case a service station building was leased to defendant by plaintiff. As the Appellate Court summarized the evidence:

> [B]oth parties knew at the time the lease was executed that the gasoline station was being operated as a nonconforming use. The ordinance of the city of Washington Court House provides that should a nonconforming use not be for a period of more than one year, the nonconforming use is terminated and cannot thereafter be revived.

179 N.E.2d at 83.

The defendant stopped using the property as a service station when it could not obtain (through the fault of a third party) a permit to make certain repairs to the premises. The court concluded:

> The failure of the lessee to continue to operate the business did not constitute a noncompliance with the city ordinance. Therefore, the lessee was not obligated to save the lessor harmless [under a lease clause requiring lessee to comply with applicable ordinances]. There was no provision in the lease whereby the lessee was obligated to operate the business. In our opinion, the defendant under the terms of the lease was not legally bound to preserve the nonconforming use by continued operation of the gasoline station or to respond in damages.

179 N.E.2d at 84.

The substantial loss to plaintiffs that may have resulted and the relative economic position of the parties (that is, the probable ability of the defendant to have continued the gasoline business to the termination of the lease even at a loss to itself) are urged as unusual circumstances creating equities in favor of plaintiffs or requiring construction of the lease in some manner to require continued operation of the business. However, the lease must be construed without regard to the parties. Had MOBIL OIL been the lessor and the STEVENS been the lessees, the construction of the lease would have to be the same.

All of the cases that have found a lessee obliged to continue operations have done so on the basis that the leases required such action; the special circumstances are used for the purpose of construing lease provisions. Here the lease provisions are much more favorable to the lessee's position. Several of the provisions of this lease come very close to saying that defendant may discontinue its operations. Most of the other cases discussed above, and all those that sustained the lessors' position, had clauses in them very much like that in *Knoop*: "to be used as a filling station for the sale of gasoline, oil, automobile supplies and accessories and any and . . ." 331 Mich. at 695, 50 N.W.2d at 330, or that in *Amos*: "[that lessee would not use the premises] for any other purpose than Commercial and Home." 67 A.2d at 688.

Leaving aside the fairly clear implications in paragraphs III and IV, discussed above, that lessee could discontinue operations, there are two lease provisions that require discussion as possibly permitting the implication of a duty on the defendant to continue operations.

First, the lease provided that:

Tenant shall comply with all applicable laws and ordinances relating to health, nuisance, and fire, and save Landlord harmless from noncompliance with the same, but Tenant shall not be required hereunder to make structural alterations, repairs, or improvements, or to pay assessments therefor.

Paragraph II.

Second, the lease provided that:

Except as otherwise provided herein, the Tenant further covenants and agrees that he will, at his own expense, during the continuation of this Lease, keep the said premises and every part thereof in as good repair and at the expiration of the term, yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted.

Paragraph IX.

 Disputes regarding the sort of clause contained in paragraph II arise most often in connection with repairs made necessary to comply with building code requirements. However, there is an exception to such requirements when the need to act to comply with the ordinance arises from a major change in governmental policy, the reason apparently being that the parties are presumed to have contracted with a view to laws in effect at the time of the signing of the lease. See *Herald Square Realty Co. v. Saks*, 215 N.Y. 427, 109 N.E. 545 (1915). There do not appear to be any Michigan cases dealing with this problem.

In this case, the problem is complicated by the fact that it is not clear whether compliance with the new abandoned service station ordinance requires that it continue to be operated. Compliance with the ordinance can take the form of converting the property to an alternative use, or tearing down the building. If the defendant had done those things it would presumably have complied with the municipal ordinance, the property would not have constituted a nuisance, and the provisions of paragraph II would not have been violated. Cf. *Powell v. Socony Mobil Oil Co.*, 113 Ohio App. 507, 179 N.E.2d 83, 85, quoted above. Permitting the building to have been torn down might well have constituted waste but defendant would not have violated the lease provision regarding compliance with ordinances.

One case which has considered the impact of a clause similar to that found in paragraph IX in the context of the issue of whether there is a duty to use premises is *Asling v. McAllister-Fitzgerald Lumber Co.*, 120 Kan. 455, 244 P. 16 (1926). In that case the lease was silent as to the use of the leased property, which prior to the lease had been used as a lumber yard. The lessee did not use the premises for any purpose, and lessor alleged that as a result of being vacant, they had fallen into disrepair. The Court held that this constituted a breach of an implied covenant that the premises would be put to a reasonable use and that the lessor was entitled to terminate the lease because of the lessee's conduct.

Of course, *Asling* involved allegations of *physical* damage from damage from the failure to use the premises, and the opinion of the dissenting judge is persuasive in arguing that the proper remedy is not to create a duty to use the premises, but rather to permit the lessor to pursue remedies for waste or breach of a covenant to keep the premises in repair. It is clear that it was the presence of physical damage to the premises that moved the majority to find the lessee's action improper.

For the foregoing reasons, the Court concludes that neither the duty to avoid committing waste nor the provisions of the lease obligated defendant to continue to operate a service station or to preserve plaintiffs' right to use the premises for that purpose at the end of the lease. Accordingly, defendant's Motion for Summary Judgment IS GRANTED.

Defendant has filed a counterclaim for the rent that it would have received had plaintiffs consented to the proposed sublease of the premises for use as an auto reconditioning center.

It is clear that on the pleadings before the Court the defendant is not entitled to this relief. Defendant's answer admits that defendant ceased to pay rent in March of 1975. Paragraph 18. The letter to plaintiffs in which defendant requested consent to the sublease, a copy of which is attached to the affidavit in support of the motion for summary judgment, was dated February 14, 1975, and indicated that approval was needed by March 31, 1975.

Defendant would not have any claim to the rent that might have been received under the sublease ($175.00 per month for six months and $200.00 per month thereafter) without paying the $550.00 minimum rental provided in the lease between plaintiffs and defendant.

Plaintiffs' complaint does not request a judgment for rent. If such a claim is ever made in this or another court, defendant could claim a set-off for the lesser amount that it might have received under the sublease if it is entitled to the same. However, plaintiffs not having made a claim for rent, this counterclaim is premature and IS DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.