**STOKES et al. v. REALEST CORPORATION.**

No. 626.

Municipal Court of Appeals for the District of Columbia.

July 22, 1948.

Ellis B. Miller, of Washington, D. C. (Milton W. King, Bernard I. Nordlinger,

and Wallace Luchs, Jr., all of Washington, D. C., on the brief), for appellants.

Ernest F. Henry, of Washington, D. C. (Jerome F. Barnard, of Washington, D. C., on the brief),for appellee.

Ruffin A. Brantley, Asst. Gen. Counsel, of Washington, D. C. (Ernest F. Williams, General Counsel, of Washington, D. C., on the brief), for Administrator of Rent Control.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is an appeal from a decision by a statutory three-judge court affirming an order of the Administrator of Rent Control, which granted appellee, who was petitioner below, increased maximum rent ceilings on apartments in the Westchester Apartment buildings.

The petitioner, Realest Corporation, filed with the Rent Administrator on May 17, 1947, a request for 17½% increase in rental to compensate for increased maintenance, operating cost, taxes, and capital improvements made since January 1, 1941. Upon hearing before an examiner for the Rent Administration, counsel for 266 out of a total of 558 tenants protested the proposed increase and showed that the premises in question had been continuously owned and operated by the Westchester Apartments, Inc., from January 1, 1941, through February 25, 1947. At the latter date the property was sold to petitioner. To support its demand for rent increases counsel for the new owners introduced detailed figures showing substantial cost increases in operating expenses between the years 1940 and 1946. It showed also that increased taxes and water rent were to be levied as of July 1, 1947, and the amount thereof.

Numerous witnesses for petitioner testified that capital improvements in the form of landscaping, roofing, alterations, and decorating estimated to cost $250,000 were underway. However, it was not proven that any significant part of the projected capital improvements had been completed as of the petition date, although contracts therefor had been let and work begun.

Respondents offered rebuttal testimony by numerous tenants to the general effect that the service at the Westchester had been substandard during the war and had not appreciably improved since the war. They further stated that the new landscaping and redecorating would prove of no material value to the tenants. Some of them preferred the old landscaping to the new.

At the outset of the hearing before the examiner and at numerous other times throughout the proceedings counsel for respondents moved to dismiss the petition on the theory that petitioners were not entitled to utilize the cost experience of the former owners for the years 1941 through 1946 because the new owners had not shown any cost increase as to them. The examiner denied these motions. The examiner held, however, that the capital improvements, not having been completed, did not constitute a proper basis for rental increases. He also disallowed certain of the items claimed as increased costs of operation, but allowed a 10% increase in the rentals on account of increased taxes and increased maintenance and operating expenses. Since the total rentals were approximately $630,000, the increase granted would augment the landlord's income approximately $63,000 per annum. Upon joint petition for review, the Administrator on August 28, 1947, affirmed the examiner's findings and adopted his proposed order. The Municipal Court in turn affirmed and an appeal was taken to this court.

The petition was filed under Section 4 (b) of the Rent Act.[1] This section in its pertinent portions provides:

"Any landlord may petition the Administrator to adjust the maximum-rent ceiling or minimum-service standard, or both, applicable to his housing accommodations to compensate for (1) a substantial rise, since January 1, 1941, in taxes or other maintenance or operating costs or expenses, or (2) a substantial capital improvement or alteration made since January 1, 1941 * * *."

---

[1] Code 1940, Supp. V, 45—1604(b).

From this language respondents take the word "compensate" and advance authorites to support their contention that this word means to recompense, to remunerate, to indemnify, to give an equivalent for loss and suffering They urge that the purpose of the section was to authorize rental increases for the sole purpose of paying back to a landlord only losses suffered by that landlord because of previous excess of expenses over rental income. Upon this theory they argue that in order to be entitled to increased rentals the petitioning corporation must show cost increases during its own period of ownership as compared with the date when it took over the ownership and operation of the property. They further contend in effect that petitioner purchased the property after a full and thorough investigation of the project, as a productive investment, and it should not be entitled to benefit from a right which if it existed at all belonged to the former owner.

■ We believe that respondents have misinterpreted the meaning and purpose of the applicable section of the Rent Act. This purpose, we think, is not to make up for past losses. The first definition of "compensate" given by Webster's New International Dictionary (2d Ed.1945) is "to weigh several things with one another, to balance with one another." We believe this is the meaning of the word as used in the statute. That statute froze rents in the District of Columbia at the levels existing on January 1, 1941, and then authorized increases "to compensate for" substantial rises, since the freeze date, of certain specified expenses. The purpose clearly was to permit the administrator to maintain in whole or in part the same ratio between rentals and expenses as existed on the freeze date, or to balance rentals with expenses. If the purpose was to pay back for losses suffered in the past, then rent increases would have to operate retroactively, but it is now thoroughly established that they act only prospectively.[2] The theory of respondents would result in the establishment of successive rent ceilings as of the date of each change in ownership. This is not what the

law provides. It establishes one test date, namely, January 1, 1941, regardless of ownership on that date.

In the case at bar petitioner showed the rentals in effect for each apartment on January 1, 1941. It also introduced from the books of the predecessor owner the detailed operating expenses for the year ended January 1, 1941, and for each successive year including 1946, which, for the latter year and including taxes and water rents effective July 1, 1947, exceeded the similar figures for 1940 by more than $63,000 represented by the rent increase granted. Petitioner also showed that no rental increases at the Westchester had been requested or granted since the freeze date. Furthermore, it showed that since purchasing the property in March 1947 the new landlord had inaugurated an extensive program of rehabilitation and improvements, and had installed as managing director a man with 30 years experience in apartment and hotel management, including experience as manager of the Mayflower and Roger Smith hotels in Washington. This managing director testified that the rehabilitation of the property had been inaugurated and was going forward, that the decorating staff of the building had been almost doubled, that under the previous management apartments had been redecorated once every four years but that with the staff already at work in May 1947 that it would be possible to redecorate them every three years. Repairs and upkeep is one of the chief items of operating expenses. One of the tenants admitted that hallways seemed much cleaner under the new management. The chief engineer of the new owner, also a man of wide experience, gave detailed testimony as to surveys made of the physical plant and services rendered.

■■ The fundmental issue in this, as in all similar cases, is not what particular owner is to receive increased rentals or what particular tenants are to pay them. It is rather whether the expenses of the operation of the property, regardless of ownership, have increased since January 1, 1941, sufficiently in the opinion of the Rent Adminstrator to justify the rental increase al-

---

[2] Wilkerson v. Montgomery, D.C.Mun. App., 47 A.2d 102, and cases there cited.

lowed. The past is used as a measuring stick for the future. A landlord, basing his right to increased ceilings on increased costs, must show an increase in present and anticipated future costs. Records showing his predecessor's costs are entirely competent to make such a showing. But the petitioner must, of course, show applicability to himself. He must show relationship between past cost and those presently experienced.

 In the case at bar petitioner has shown this relationship to the satisfaction of the Administrator. We believe petitioner should have shown detailed costs for the first few months of 1947 and up to the date of the hearing in June. Its expressed reason for not doing so was the seasonal nature of operating expenses. Read as a whole, however, we believe the record fully justified the examiner and the Administrator in concluding that petitioner's operating expenses since taking over operation of the property have been at least as high as those of the predecessor owner during 1946. The 1946 expenses largely exceeded those for 1940. The record shows that respondents, through a certified public accountant, had full access to the books of petitioner, but there was no intimation that the staff of employees had been decreased or operating expenses reduced in 1947. What evidence there was on this subject was all to the contrary. The Administrator was entitled to draw reasonable inferences from the specific testimony. Under the circumstances, we believe we would be violating the fundamental principles applicable to court review of administrative findings to hold that the Administrator's conclusion was not supported by substantial evidence or was plainly wrong.[3]

 One finding or conclusion of the examiner which was affirmed by the Administrator has been severely criticized by respondents and has caused at least some of the controversy in the case. This was the holding that such proceedings are "in the nature of an in rem action." This was obviously a misuse of the term in rem, but it is clear that what was meant was that the proceeding involved the earnings and expenses of the property itself regardless of the ownership. The error, if it may be termed error, was harmless because there was also made the further finding that "* * * maintenance and operating expenses including wages paid to employees, real estate taxes now assessed and payable on and after July 1, 1947, and water rent rate have increased substantially since January 1, 1941, and form a basis for adjustment of the maximum rent ceiling to the extent recommended herein."

This finding, we conclude, was sufficiently supported by the evidence.

Affirmed.

[3] United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821; Interstate Commerce Comm. v. Union Pac. R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Code 1940, Supp. V., 45—1609.