**OSTROW et al. v. HORNING, Inc.**

No. 833.

Municipal Court of Appeals for the
District of Columbia.

Argued Sept. 21, 1949.

Decided Nov. 8, 1949.
Rehearing Denied Nov. 23, 1949.

278

Maurice Friedman, Washington, D. C., with whom Maxwell A. Ostrow, Washington, D. C., was on the brief, for petitioners.

John J. Wilson, Washington, D. C., for respondent.

Ernest F. Williams, Washington, D. C., with whom Ruffin A. Brantley, Washington, D. C., was on the brief, for Administrator of Rent Control.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

A group of tenants appeal from an order of the District of Columbia Rent Administrator increasing the rents on some 180 apartments in The Chesapeake located at 4607 Connecticut Avenue, N. W.

The landlord's petition to the Administrator requested increases based upon two of the grounds authorized by the Rent Act, first, a substantial rise in taxes or other maintenance and operating costs or expenses and, second, that the existing rentals were, due to "peculiar circumstances" affecting such housing accommodations, substantially lower than those generally prevailing for comparable housing accommodations.[1] In the same proceeding the tenants petitioned for a lowering of the rentals on the ground that the services supplied by the landlord had been decreased. The Administrator held against the landlord's request for rent increases due to so-called peculiar circumstances and also against the tenants' request that rents be decreased. However, he granted an increase of approximately 5.2% of existing rentals. The landlord accepted the Administrator's decision but the tenants appealed.[2]

1. The principal assignments of error are that findings made by an examiner and by the Administrator were too indefinite under previous holdings of this court[3] and were not sufficiently supported by evidence.

Our conclusions in previous decisions may be summarized as follows: The basis of calculation used by the Rent Administration must be in sufficient detail so that both parties may, if they desire, raise suitable objections before the Rent Administration and on appeal to this court; the bases of calculations used by the Administration in different cases must be reasonably consistent and if a different method is used in an individual case reasons for such change in method must be shown; the mere averaging of all expense items for all years after the base year and then deducting the expenses of the base year from the average figure is an inappropriate method of calculating the increase to be projected into the future; in order to arrive at a correct figure the Administrator should compare the various items of operating expense for the base year and for the last year of operation, making such adjustments as are necessary based upon expenses for the intervening years and other relevant data.

It is our opinion that the Administrator in the present case has sufficiently met these requirements. The examiner made a finding that the increased operating and maintenance costs, including taxes and water rent, to be used as a basis for increased rentals, was $9,003. This figure

1. Code 1940, Supp. VI, § 45—1604(a), (b).

2. Code 1940, Supp. VI, § 45—1609(c), as amended.

3. Winkler v. Ballard, D.C.Mun.App., 63 A.2d 660; Hall v. Ring Management Co., D.C.Mun.App., 63 A.2d 656; Proctor v. Miller, D.C.Mun.App., 63 A.2d 665; Shapiro v. Bombardier, D.C.Mun.App., 63 A.2d 772.

was changed by the Administrator to $8,-901, representing an increase of 5.2% of the rent on each apartment. This contrasted with an increase of 9.25% requested by the petitioner. The record before us contains detailed testimony regarding all items of costs and expenses and also includes a detailed and skilled analysis made by an accountant representing the tenants. Without certain small adjustments in so-called administrative expenses, the figures used by the tenants' accountant showed an increase of $8,272 in the operating costs of 1947 as compared with those for 1943. Without repeating detailed calculations, we believe it sufficient to say that if the 1943 expenses are deducted from the 1947 expenses and proper adjustments made as to coal, electricity, and insurance, a figure approximating that arrived at by the Administrator is found. We therefore conclude that the Administrator's finding in this respect is supported by sufficient substantial evidence and therefore must be sustained. In the instances in which the Administrator did not adopt the adjustments as urged by tenants' accountant, we do not believe tenants have carried the burden of showing the Administrator's methods were wrong.

2. Tenants urge also that the Administrator was without authority to grant any increase. The basis of this assignment of error stems from the fact that this apartment house was completed after January 1, 1941. Section 2(1)(c) of the Act, Code 1940, Supp. VI, § 45—1602(1)(c), provides that for housing accommodations not rented on January 1, 1941, nor within the year ending on that date, the rent shall be that generally prevailing "for comparable housing accommodations as determined by the Administrator." Section 4(b), Code 1940, Supp. VI, § 45—1604(b), under which the present proceedings were brought, contains a proviso that adjusted maximum rents due to increased costs or expenses shall not permit the receipt of rent in excess of the rent generally prevailing "for comparable housing accommodations as determined by the Administrator." It is the position of the tenants that rents in an apartment

house at 4801 Connecticut Avenue were used as comparable housing accommodations when the rents for The Chesapeake were established in 1942, that the rentals at 4801 Connecticut Avenue have not been increased, and that hence The Chesapeake rentals as adjusted by the Administrator are certain to be higher than those for "comparable housing accommodations."

We are unable to agree with tenants' position. Under a strict application of this principle, the Administrator could grant no rent increases on housing accommodations which came upon the rental market after the test date of January 1, 1941, even though the operating expenses for such housing accommodations increased materially. We are clear, considering the Rent Act as a whole, that Congress had no such intention. Furthermore, while the record indicates that the rent scale at 4801 Connecticut Avenue was considered by the rental agent in establishing the rentals for The Chesapeake, it is also evident that other apartment houses were considered in arriving at the determination that the increased rentals contained in the present order were not in excess of those generally prevailing for comparable housing accommodations. Considering the question from a realistic standpoint, the record shows that while the first rentals charged for these apartments were properly filed by the landlord in 1942, the approval of the Administrator was evidenced by a rubber stamp, signed by the Administrator, and not dated until March 10, 1948. It is clear, therefore, that the Administrator in fact gave no actual consideration to the rents on comparable housing accommodations at the time the rent schedule was first filed. Whether or not rent schedules so filed and approved meet the requirements of the statute, it is unnecessary for us to determine, but we are entirely clear that increases may be granted where a proper showing is made that costs and expenses have increased and where a finding is made, based upon substantial evidence, that the new schedules do not exceed those existing for comparable housing accommodations. In the present case, we hold that the finding of the Administrator as to

comparability is sufficiently supported by substantial evidence.

3. There was evidence in the present case that several apartments had been rented furnished for some years without application having first been made for a determination of maximum rent ceilings on such apartments. Based upon such evidence, tenants urge that the renting of such furnished apartments was contrary to the Rent Act and that since the landlord was violating the law with respect to this small group of apartments the Administrator should have dismissed the entire proceeding. Such position, we believe, is not supported by any established rule of law. As this court has stated previously, the Rent Act itself provides means for enforcing violations of its provisions and to hold a landlord who has violated the Act in one respect to be deprived of all rights under other provisions would be adding a new penalty not provided by statute. Amos v. Cummings, D.C.Mun.App., 67 A.2d 687. The concurring opinion in the Amos case, filed by the writer of the present opinion, states no different rule.

4. With respect to tenants' claim that rentals should be reduced because of decrease in services rendered, the examiner found that the evidence did not support such claim "to a sufficient extent to justify the relief requested." The Administrator after review approved this finding. We have reviewed all of the evidence on this and other points. While testimony was received from tenants and a discharged former manager showing that in numerous instances there had been failure by the landlord to repair cracks in walls and to render other services, contrary evidence was introduced in behalf of the landlord. In addition, the examiner's findings show that he made a personal inspection and study of the premises. Under such circumstances we cannot say that the ultimate finding was unsupported by substantial evidence.

While we find it unnecessary to discuss in detail other assignments of error made by tenants, we deem it appropriate to express our view that the tenants in the present case were given a full and fair hearing, that consideration was given to every point raised by them, and that the conclusion of the Rent Administrator in the present case is fully justified by the evidence and therefore must be and is

Affirmed.

HOOD, Associate Judge, concurs in the result.