**DYSERT et al. v. RING MANAGE-
MENT CO.**

No. 820.

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 7, 1949.

Decided Nov. 29, 1949.

Robert C. Handwerk, Washington, D. C.,
for petitioners.

Ernest F. Henry, Washington, D.C., with
whom Jerome F. Barnard, Washington,
D. C., was on the brief, for respondent.

Ernest F. Williams, Washington, D. C.,
with whom Ruffin A. Brantley, Washington,
D. C., was on the brief, for Administrator
of Rent Control.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is a petition by 17 tenants of the
Carlyn Apartments to review an order of
the Rent Administrator increasing rents on
the basis of a substantial rise in taxes and

other operating costs or expenses between the fiscal years ended June 30, 1943, and 1947.

In certain aspects the present appeal is a renewal or continuation of a previous appeal entitled Beulah M. Hall et al. v. Ring Management Co., decided by us December 28, 1948.[1] That appeal was brought by some 116 tenants occupying certain of the 270 apartment units in the building. In our previous opinion we approved some of the findings of the rent examiner and the Administrator, but as to the principal conclusion that the rents should be increased by approximately 6.94% we reversed. After a further hearing before a rent examiner, the Rent Administrator on April 27, 1949, made new findings of fact and issued a new order. It is this last order which is now under attack.

During the pendency of the present appeal, it was disclosed that the number of tenants appealing had been reduced from 116 to 17 and that the remainder had either affirmatively acquiesced in the order of the Administrator or did not desire to participate in this petition for review. Included among the tenants not involved in the present proceeding is Beulah M. Hall, in whose name the previous appeal was prosecuted. Over the protest of respondent, we allowed the appeal to proceed in the name of A. S. Dysert and 16 other tenants whose names appear in the margin.[2]

In its original application to the Rent Administration respondent claimed that operating expenses, including real estate taxes and water rent, had increased $21,711.99 during the fiscal year ended June 30, 1947, as compared with the fiscal year ended June 30, 1943, and on the basis of such increases asked that apartment rentals be increased 7½%. In the prior proceedings the Rent Administrator adopted in general the basis proposed by respondent. That was the

fundamental ground upon which we reversed. In other cases decided by us at about the same time, the Administrator had averaged all expenses for the years after the base year except taxes and water rents, and compared such averaged figures with those for the base year. We held no reasonable explanation had been made for the use of such conflicting methods in different cases. In the present case the Administrator himself has made detailed findings of fact. He has listed certain expense items such as repairs as to which he found that the figures for the fiscal year ended June 30, 1947, were not representative and that for such items a more accurate picture would be obtained by taking an average for the fiscal years ended June 30, 1944, 1945, 1946, and 1947 and comparing them with the same expense items for the fiscal year ended June 30, 1943. As to the remaining items, the Administrator found that an accurate picture could be obtained by comparing the first and last fiscal years. Based upon the combination of these two sets of figures, the Administrator concluded that operating and maintenance costs and expenses, including taxes and water rents, had increased $19,153.32. He therefore ordered an increase of 6.6% in the apartment rentals which he found to be $289,410 per annum. He applied this percentage to each apartment rent with adjustments upward or downward to the nearest quarter of a dollar.

One of the principal assignments of error made by petitioners is that the Administrator used as a basis for his calculations operating expenses for the fiscal years beginning July 1, 1942, and ended June 30, 1947. Petitioners urge that figures for the calendar years beginning January 1, 1942, and ending December 31, 1946, should have been used and have made an analysis of figures upon that basis.[3] We

1. Hall v. Ring Management Co., D.C.Mun. App., 63 A.2d 656.

2. Roberta N. Cook, Willard W. Gatchell, Sanford H. Bolz, H. Douglas Weaver, James P. McKenna, J. E. Inman, Constance Roach, Henry T. Nuttycombe, Leone Bruch, Theodore L. Block, John

E. Lynch, James O. Wrightson, Jr., R. J. Kohnz, E. S. Powers, O. B. Smart, G. H. Leigh.

3. One of petitioners' complaints is that in his finding No. 13 the Administrator referred to expenses "for the fiscal year ending June 30, 1942." This is an ob-

believe the Administrator was well within the discretionary power entrusted to him by the Rent Act in using the fiscal year basis in the present case. Several obvious facts dictated this choice. In the first place the Carlyn was opened as a new apartment house on February 1, 1942, and the first rent schedules were not filed until May 15, 1942. Hence there were no operating expense figures for the full calendar year beginning January 1, 1942. Furthermore, the original petition for rent adjustments was filed September 12, 1947. Therefore, the fiscal year basis was used so that figures could be brought as nearly as practicable up to the date of the application. Again, petitioners in the figures used by them included for 1942 such items as one for pre-opening expenses of $2,697.96, which did not recur in later years, and therefore was not an ordinary expense and furnished no basis for comparison. We conclude that the use of the fiscal year basis in this case was entirely appropriate and proper.

Petitioners next attack the finding of the Administrator that operating and maintenance costs and expenses had increased $19,153.32 on the ground that in its original petition respondent had shown an increase amounting to only $17,080.57. This assignment of error is based upon a misconception. The figure in the original petition cited by petitioners was for the increase in operating expenses without real estate taxes and water rent. Including these two items, the original petition showed total increases of $21,711.99. This latter figure is the one to be compared with $19,153.32 as found by the Administrator since he included real estate taxes and water rent in his total.

■ Petitioners also complain that the Administrator used total rentals of $289,-410, compared with increased expenses of $19,153.32, in order to arrive at the percentage increase determined by him. This complaint is based upon the fact that the original petition showed annual rental income of $287,670. Although the larger figure used by the Administrator apparently is based upon rents for certain apartments not included in the original petition, we have made no detailed check of this item for the obvious reason that the mistake, if any, works to the advantage of the tenants and the landlord has not complained. $19,153 divided by $287,670 gives a larger figure than $19,153 divided by $289,410, and thus if the Administrator had used the figures suggested by petitioners a greater rent increase would have resulted to their detriment.

■ Further assignments of error are that the basis of calculation, or formula adopted by the Administrator, is not in accordance with our previous decision in this case and with our opinions in other cases, and that the Administrator's findings are not sufficiently detailed and specific. We must reject both contentions. It would be helpful both to litigants and to this court if the record in such cases contained the actual figures used by the examiner or the Administrator. Nevertheless, in the present case the Administrator by reference in his findings to page numbers of the record has made such figures easily ascertainable.[4] We have held recently that this is sufficient.[5] So far as the formula used by the Administrator is concerned, petitioners have demonstrated no fundamental error, and it is in accord with principles stated previously by this court.[6]

One contention of petitioners seems on its face to have more merit. Included in the comparative figures for the fiscal years ended June 30, 1943, and June 30, 1947, are items for elevator operators' salaries. At oral argument and in petitioners' brief it was stated that the services of elevator operators had been discontinued in March 1948 and that since that time the elevators

vious clerical error and in another finding the Administrator mentioned the fiscal year ending June 30, 1943, which was clearly correct.

4. The detailed figures are tabulated in respondent's brief.

5. Ostrow v. Horning, Inc., D.C.Mun.App., 69 A.2d 277.

6. Shapiro v. Bombardier, D.C.Mun.App., 63 A.2d 772; Ostrow v. Horning, Inc., supra.

have been operated by tenants themselves. This fact, however, does not appear in the record. The findings of fact of the examiner in the original case were dated December 29, 1947, and the order of the Administrator was dated February 24, 1948. In the present proceedings, following our previous opinion of December 28, 1948, the Administrator vacated his previous rent order and set the matter for further hearing before one of his examiners. When the matter came before the examiner counsel for present petitioners objected to the introduction of any additional evidence. Respondent finally acquiesced in this view and therefore no further evidence was taken. It results that the present findings and order of the Administrator are based entirely upon the previous record and that this course was followed upon the insistence of petitioners. We conclude that petitioners are in no position to object to the inclusion of this item, particularly in view of the provision in the Rent Act that no objection that has not been urged before the Administrator shall be considered by the court, unless the failure to urge such objection shall be excused because of extraordinary circumstances.[7] Furthermore, if the record had been brought down to March 1948, when the elevator operators are said to have been eliminated, increases in other figures might have been shown. As to other items of cost which existed in prior years but had been eliminated during the fiscal year ended June 30, 1947, proper allowances were made by the Administrator.

Petitioners complain also of the method followed by the Administrator in the treatment of garage income and expenses. We discussed the question of garage income in our previous opinion and adhere to the position there taken. With respect to garage expenses, we directed a re-examination by the Administrator. We believe he has fully met this requirement. He has made a finding which is fully supported by the record that the salaries of garage employees and all other expenses directly attributable to operation of the garage and other commercial portions of the building had been deleted from the operating and maintenance costs previously considered. In addition, he has now enumerated various items of general expenses, a portion of which he finds should be apportioned to garage and other commercial space. Finding that such space approximates one-tenth of the cubic foot area of the entire premises, he has deducted 10% of such items as electricity, fuel, elevator operators' salaries, and taxes and has used the resulting net figures in making his final calculations. We conclude that petitioners, particularly in view of their objection to the taking of further evidence in the present proceeding, have shown no error in such figures as used by the Administrator.

The final assignment of error is that the original proceeding was brought by the Ring Management Company, an alleged partnership, but that the petitions were not signed by all the partners, and hence that the Administrator lacked jurisdiction because there were no proper parties plaintiff in that the original petition was signed only by Gustave Ring, one of several partners in Ring Management Company. We see no merit in the contention. During the hearing before an examiner in the present proceeding, there was filed a motion stating that H. G. Smithy Company had become the landlord of the Carlyn Apartments. A request was made, therefore, that H. G. Smithy Company be substituted for Ring Management Company. This motion was vigorously objected to by petitioners. The Administrator's findings and order made no mention of the point, but he continued to title the case in the name of Ring Management Company. We believe that respondent's motion for substitution of parties should have been granted and that if the present proceedings are titled in the name of the wrong respondent petitioners are not in a position to complain. Where a new landlord appears during the pendency of a proceeding, a substitution of parties may be made, even on appeal.[8] As

---

7. Code 1940, Supp. VI, 45—1609(b).

8. International Exch. Bank v. Pullo, 52 App.D.C. 199, 285 F. 933.

we stated in Stokes v. Realest Corporation, D.C.Mun.App., 60 A.2d 532, 534, "The fundamental issue in this, as in all similar cases, is not what particular owner is to receive increased rentals or what particular tenants are to pay them. It is rather whether the expenses of the operation of the property, regardless of ownership, have increased \* \* \* sufficiently in the opinion of the Rent Administrator to justify the rental increase allowed."

██ Several other minor assignments of error have been made by petitioners, but, while we have considered them, we find it unnecessary to discuss them in detail. Our general conclusion is that petitioners have not borne the burden of establishing, as provided by the statute, that the order of the Administrator is not in accordance with law or is not supported by substantial evidence.

Affirmed.

CAYTON, Chief Judge (concurring).

I agree with the foregoing opinion and add a few words on the subject of garage rent. On the earlier appeal I wrote critically of the Administrator's failure to consider income from garage rent and service in making up his finding. Now the Administrator has made a special finding that use of garage facilities is not and never was included in the minimum service standard; that though such facilities were available for some of the tenants, rental of garage space was to be the subject of separate agreement between landlord and tenant, distinct from the rental agreement covering occupancy of an apartment; and that garage income is therefore not properly a matter for consideration in connection with adjustment of apartment rent ceilings. This conclusion seems to be amply supported by evidence in the record.

More important, in his reconsideration of the case, the Administrator has removed the objection arising from his refusal to consider garage income. For in the previous case, while he refused to consider the income received from the garage in the rent adjustments, he did include some garage expenses in his general expense figure.

This was manifestly unfair to the tenants. Now as, pointed out in the foregoing opinion, he has made deductions from the general expense figure for "all general expenses readily ascertainable as having some application to the garage operation \* \* \*" This meets the requirements of our earlier opinions and assures equal treatment to all classes of tenants directly or indirectly affected by the garage operation.